```
 1              IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF OREGON

 3                        EUGENE DIVISION

 4

 5   ST. CHARLES HEALTH SYSTEM,      )
     INC., an Oregon nonprofit       )
 6   corporation,                    )
                                     )
 7                      Plaintiff,   )  Case No.
                                     )  6:21-cv-00304-MC
 8                                   )
                                     )
 9              vs.                  )  March 2, 2021
                                     )
10   OREGON FEDERATION OF NURSES     )  Eugene, Oregon
     AND HEALTH PROFESSIONALS,       )
11   LOCAL 5017, AFT, AFL-CIO,       )
                                     )
12   _____ Defendant.  ___ )

13

14

15                TRANSCRIPT OF PROCEEDINGS

16                   (By Videoconference)

17

18       BEFORE THE HONORABLE MICHAEL J. MCSHANE

19          UNITED STATES DISTRICT COURT JUDGE

20

21

22

23   COURT REPORTER:    Kellie M. Humiston, RMR, CRR
                        United States District Court
24                      1000 SW Third Avenue, Room 301
                        Portland, Oregon 97204
25                      (503) 326-8186
```

1                          **A P P E A R A N C E S**

2    FOR THE PLAINTIFF:          DAVIS WRIGHT TREMAINE
                                 By:  Mark A. Hutcheson
3                                     Sarah Ames Benedict
                                 1300 SW Fifth Avenue, Suite 2400
4                                Portland, OR 97201
                                 503-241-2300
5

6    FOR THE DEFENDANT:          HIGHET LAW
                                 By:  Catherine A. Highet
7                                1022 SW Salmon Street, Suite 430
                                 Portland, OR 97205
8                                503-228-1889

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    (March 2, 2021, 9:02 a.m.)
 2                    P R O C E E D I N G S
 3
 4          THE CLERK:  United States District Court for the
 5    District of Oregon is now in session.  The Honorable Michael
 6    J. McShane presiding.
 7              Now is the time set for Case No. 21-304, St. Charles
 8    Health System vs. Oregon Federation of Nurses and Health
 9    Professionals, Local 5017, for oral argument.
10          THE COURT:  All right.  If I could have the attorneys
11    please introduce themselves for the record, starting with the
12    plaintiff.
13          MR. HUTCHESON:  Good morning, Your Honor.  My name is
14    Mark Hutcheson, and with me is my colleague, Sarah Ames Benedict.
15          THE COURT:  Okay.  Thank you.  Okay.  I see Ms. --
16          MR. HUTCHESON:  She just got kicked out of the
17    meeting -- the hearing, so she's logging back in.
18          THE COURT:  Oh, great.  And for, then, the defense.
19          MS.  HIGHET:  Good morning, Your Honor.  Catherine
20    Highet for Oregon Federation of Nurses and Health Professionals.
21          THE COURT:  Okay.  Thank you, Miss Highet.
22              So here's what I'd like to do.  I know there's been
23    some discussion perhaps about witnesses testifying today.  I'm
24    not seeing this as a case in which I'm determining a huge factual
25    dispute.
```

1          The very first issue really is whether this court has

2     any authority to act whatsoever on the plaintiff's request.  So I

3     guess I want to talk to the plaintiff first about the authority

4     that this court has or doesn't have.

5          I know this was a rushed brief to file and that we're

6     on a very short deadline, but I do want to comment,

7     Mr. Hutcheson, without being too critical, that you filed a

8     motion asking for immediate injunctive relief in a federal court

9     where, quite frankly, we don't have a ton of experience in labor

10    disputes, because they typically don't come to the court, and you

11    failed to mention a wealth of case law against your position.

12         If I had read your brief and acted quickly, but for the

13    fact I was on vacation, it would have made perfect sense, I would

14    have granted injunctive relief, but once I saw the response, I

15    realized there is no case that I can find that says a third party

16    has a right to come to the federal court and seek injunctive

17    relief on behalf of the NLRB asking for more time for them to

18    make a decision.

19         So do you have any case in which a -- first of all, is

20    there any case in which a third party has asked the court to give

21    the NLRB additional time to address the complaint, and can you

22    even find in modern case law a case where a third party, outside

23    of an attorney general, has come to the federal court seeking to

24    enjoin a strike?

25         MR. HUTCHESON:  Well, first, Your Honor -- and I want

1   to thank you for granting us this hearing -- at the outset, we

2   filed the case in state court, and it was the union who

3   immediately removed it to federal court, so you can -- you can

4   thank Miss Highet for giving you this opportunity.

5          Second, there -- we're not -- we're not bringing an

6   action on behalf of the NLRB seeking a delay, we're bringing it

7   on behalf of a hospital who's facing dire circumstances and

8   needing a little more time for the -- for the Labor Board to do

9   its job, and that's all we're doing.

10          There are cases --

11          THE COURT:  But the Labor Board is constantly under a

12   ten-day deadline for strikes, and it has -- and it's not unusual

13   for an employer to seek some relief from them.

14          We're not talking about the local Junction City

15   Sanitation Department.  We're talking about a relatively robust

16   federal agency.

17          And maybe from the record, I'm just unclear as to, A,

18   their response, and B, whether they're really required to respond

19   to your complaint, especially if they find that it's without

20   merit.

21          MR. HUTCHESON:  "They" being the Labor Board?

22          THE COURT:  Yes.

23          MR. HUTCHESON:  Yes.  So, first of all, I would agree

24   with Ms. Highet that the normal process is you file a charge to

25   the Labor Board, the Labor Board investigates it.  If they find

1    merit and they want to take action, they tell the union -- the

2    charged party that "We find merit, and you either stop doing what

3    you're doing or we're going to issue a complaint and go down --

4    go to federal court under section 10(j) of the National Labor

5    Relations Act and seek injunctive relief," and that is the normal

6    procedure.

7              But we have been advised by Region 19, which is based

8    in Seattle, and the subregional office in Portland that they --

9    this is complicated for them -- they don't have the time and

10   resources yet to give us even a preliminary ruling for Thursday,

11   when the strike is scheduled to start.

12             So we're dealing with the -- the Norris-La Guardia Act

13   gives you jurisdiction to give us injunctive relief if we jump

14   through the hoops that are laid out in sections 107 and 108 of

15   29 U.S.C.  And we think we can comply with all of that.  And

16   there's --

17             Have you read our reply brief?

18             THE COURT:  Yes.  I have, yes.

19             MR. HUTCHESON:  And that -- well, I remember in there

20   is a New York case which is similar to our situation.  So I

21   think --

22             THE COURT:  But it was a removal case that had to do

23   with an attorney general stepping in.  It wasn't the employer.

24             MR. HUTCHESON:  Yeah.  Well, the issue is whether any

25   judge can take action in this case.  And you have the declarable

1   powers to deal with a situation affecting the public's health and

2   safety, and there are numerous Supreme Court decisions that say

3   that's true.

4          THE COURT:  Give me one that says that I can act -- I

5   can act today at the request of an employer.

6          MR. HUTCHESON:  All of the cases relating to the *Garmon*

7   case, including -- I can't remember exactly the -- okay.  Here it

8   is.  It's on -- cases.  (Pause-referring).  Beginning on page 14

9   of 17 and Document 14, there are decisions that we cite to that

10  include (pause - referring) -- I've got the wrong place.

11  (Pause-referring).  There's the *Sears, Roebuck* case.

12         THE COURT:  All right.  What year?

13         MR. HUTCHESON:  What year?

14         THE COURT:  Yes.

15         MR. HUTCHESON:  1978.

16         THE COURT:  Okay.  And, I'm sorry, I don't know the

17  facts of the *Sears, Roebuck* case.  What are the facts there that

18  are relevant to this case?

19         MR. HUTCHESON:  Well, it -- I don't -- I can't recall

20  off the top of my head the facts in that case, but there are

21  cases that say that we're -- they say that:  Inflexible

22  application of the Garmon Doctrine -- which is a preemption

23  doctrine -- is to be avoided, especially where the State has a

24  substantial interest in regulation of the conduct at issue and

25  the State's interest is one that does not threaten undue

1    interference with the regulatory scheme, quoting *Farmer vs.*

2    *Carpenters* in 1977.  We don't --

3         THE COURT:  I don't think that was the employer seeking

4    an injunctive relief, it was the State.

5         MR. HUTCHESON:  In *Sears, Roebuck*?

6         THE COURT:  Uh-huh.

7         MR. HUTCHESON:  Well, Your Honor, I have to admit that

8    putting this -- this briefing together was done by people in my

9    office, including my colleagues, and not myself, and --

10        THE COURT:  Mr. Hutcheson, I -- please.  We're done.

11   We're done.  You're not passing the buck here.  You are the

12   attorney of record.  You take responsibility for the briefing --

13        MR. HUTCHESON:  I agree.

14        THE COURT:  -- (indiscernible) the briefing and, quite

15   frankly, being honest with the Court in your briefing.

16        Let me hear from Ms. Highet on this issue briefly.

17        MS. HIGHET:  Thank you, Your Honor.  Can you hear me?

18        THE COURT:  I can.

19        MS. HIGHET:  Okay.  The *Sears, Roebuck* case, as with

20   the rest on pages 14 to 17, is a preemption issue.  With

21   preemption is -- as Your Honor (indiscernible), is when there's a

22   state law that creates a cause of action and there's a concern

23   that the federal law might trump that.

24        So, for example, in *Sears*, the state law was the law

25   against trespassing; in the *Kaplan's Fruit & Produce*, the law was

1    against blocking of traffic; in the *State v. Joint Board, Nursing*

2    *Home* case, which I believe was a New York one, there was a state

3    public health law.  And in each of those cases, the court had to

4    ask whether the state's legislative command or Congress'

5    legislative command took control.

6            In this case, St. Charles is not citing any

7    (indiscernible), they are not alleging any (indiscernible).

8            THE COURT:  Miss Highet, you're getting some -- we're

9    getting some feedback.  Is there a phone near your computer,

10   maybe?  Sometimes --

11           MS.  HIGHET:  There's not one that's on.  I will power

12   it all the way off.  I could also put on headphones.  Why don't I

13   do that.

14           THE CLERK:  I also see that there are a few people on

15   the call that are not muted who don't appear to be participating.

16   If you are just listening in or if you are -- may speak later,

17   please go ahead and mute your phone or computer connection to

18   avoid feedback.

19           THE COURT:  All right.

20           MS.  HIGHET:  Can Your Honor hear me?

21           THE COURT:  Yes.  That's better.  Thank you.

22           MS.  HIGHET:  Okay.  So in preemption, the -- there is

23   a state interest, that the Court must either apply state or

24   federal law, and the cause of action is under state law.

25           In this case, the only cause of action alleged is the

1    National Labor Relations Act, so the Court -- there's no

2    preemption question here.

3              The *Sears* case and all of the others cited in the brief

4    about preemption, there's two reasons that doesn't apply.  The

5    first is that there is no state law to apply here, there's

6    nothing that can contradict the NLRA, and so the only question

7    before you is how do you apply the NLRA.

8              The second is that the cases on 10(j) that plaintiff

9    cites in its brief, many of them post-date *Sears* and they give --

10   and they make it absolutely clear that the rule against -- that

11   the rule at 10(j) is exclusive, the rule that only the Board may

12   seek injunctive relief is unaffected by any preemption doctrine.

13             So, for example, there is a *Gould* case, Wisconsin, and

14   it actually was a preemption case and it found that 10(j) was so

15   exclusive, that it preempted state law that would have allowed

16   injunctive relief.

17             The *Burlington Northern* case post-dates *Sears*, and both

18   of the Ninth Circuit cases after that post-date *Sears*.

19             And in particular, the one involving the "This hospital

20   is full of rats" banner, there were two claims -- there are

21   multiple claims the court considered.  It considered one that was

22   based on the NLRA, and it said you cannot get injunctive relief

23   based on that, full stop.  And then it considered a defamation

24   claim on the content of the banner, and that's where -- (video

25   freeze) -- would apply.

1          St. Charles asks you to exercise your equitable powers,

2    but the NLRA provides an exclusive standing to the NLRB.  And the

3    Norris-La Guardia Act makes quite -- (video freeze) -- are not to

4    assert broadly-defined equitable powers, they are to look for a

5    specific violation of law.

6          THE COURT:  Let me ask you this:  The Ninth Circuit

7    says that the NLRA generally prohibits federal courts from

8    issuing injunctions in labor disputes.  I mean, that suggests

9    there are some exceptions.  What are those -- what are the

10   exceptions in case law?

11         MS.  HIGHET:  Certainly.  Of course, the -- under

12   10(j), the national -- the court may issue injunction

13   (indiscernible) the board.

14         If there is an independent cause of action under state

15   or federal law, then the preemption analysis would apply.

16         So, for example, if it was alleged that OFNHP was

17   threatening violence, which is not something that has been

18   alleged in this case, then the employer could come to court to

19   seek enjoining the acts of violence if it could meet the

20   requirements of the Norris-La Guardia Act.  Trespassing is

21   another example at times.

22         THE COURT:  Okay.  All right.  Any reply from the

23   plaintiff?

24         MR. HUTCHESON:  I concede this is an unusual situation,

25   but we're dealing with unusual times.  And we're not asking you

1  to decide the underlying merits.  We fully expect the Labor Board

2  to do that, but they just need a little more time, and we were

3  hoping that you would give all the parties a little more time to

4  prevent disruption to the continuity of patient care in Bend,

5  Oregon.

6          THE COURT:  All right.  And I understand that concern,

7  but there's still a question of whether this Court really has

8  authority to do that, and I'm finding that I don't.

9          I'm going to make the following findings with regard to

10  the Court's authority to intervene in this matter.  I'm not going

11  to issue a written opinion, because I am concerned that if the

12  plaintiffs do wish to seek a stay with the Ninth Circuit, that we

13  have a decision today.  I think both sides need a decision today.

14  You have a very quick deadline coming up in terms of the strike

15  itself.

16          Congress intended that the NLRB have exclusive

17  authority over injunction involving labor disputes.  This

18  authority is granted to the NLRB in 29 U.S.C., section 160 10(j).

19  The Supreme Court has held that, in drafting the NLRA, Congress

20  granted exclusive authority to the Board to determine what is and

21  what is not an unfair labor practice.  And here I'm quoting from

22  *Amalgamated Utility Workers vs. Consolidated Edison Company of*

23  *New York*.  That's 309 U.S. 261, a 1940 case.

24          And the court went on to say in 1953 that the federal

25  courts are prohibited from (indiscernible) in labor disputes, and

1      that's in *Garner vs. Teamsters, Chauffeurs and Helpers Local*

2      *Union*.  That's 346 U.S. 485, again, a 1953 case.

3          The Ninth Circuit has held that, quote, the NLRA

4      generally prohibits federal courts from issuing injunctions in

5      labor disputes.  That's *San Antonio Community Hospital vs.*

6      *Southern California District Council of Carpenters*, and that's

7      found at 125 F.3rd 1230.  That's a 1997 decision.

8          The only exception that seems to be found in the law is

9      the circumstances where the Board itself petitions the court to

10     enjoin an act, or in some circumstances where an attorney general

11     petitions the court either in a preemption matter or for the

12     court to enjoin criminal acts.

13         Here, the labor dispute is (indiscernible) complicated,

14     and as I will discuss below briefly, the dispute itself, the

15     complaint filed by the plaintiff, is unlikely to win on the

16     merits.

17         The NLRB is perfectly capable if they choose to address

18     this alleged dispute or to seek guidance from the court.  They

19     have not done so.  This court has no authority to grant the

20     relief requested by the plaintiffs.

21         I'm further finding that the plaintiff is unlikely to

22     win on the merits of the claim, and here I'll make the following

23     factual findings.  In September 2019, the NLRB certified

24     defendants as the bargaining unit for about 150 technicians and

25     therapists working for St. Charles.

1          The same month, the defendant filed its form F-7 as a
2    section 8(d), (b) notice.  This section provides that where the
3    bargaining unit is for initial agreement following certification
4    or recognition, at least 30 days notice of the existence of the
5    dispute shall be given by the labor organization.
6          A labor dispute, as both sides know, under the NLRA is
7    very broadly defined.  It includes any controversy concerning the
8    terms, tenure, and conditions of employment.
9          So back as early as September 2019, the dispute was
10   noticed.
11         Now, the purpose of this section is to prevent a new
12   bargaining unit from going on strike when intent is a formation.
13   It requires a new bargaining unit to identify a labor dispute and
14   to give both parties a time period to resolve the dispute at the
15   bargaining table.
16         So the 30 days is really a -- it puts the onus on the
17   union to come to the bargaining table if they're newly formed.
18         Here, the plaintiff has been aware of the dispute and
19   the nature of this dispute since September 2019.  Following the
20   filing of the form F-7, the parties negotiated for well over a
21   year.  The parties last met on December 3rd, 2020.
22         On January 20th, 2021, the defendant filed its 8(g)
23   notice stating that they would engage in informal picketing on
24   January 31st and February 1st.
25         On February 2nd, plaintiff stated it would only meet

1    with the union through a mediator.  The mediator provided several

2    dates, and the plaintiffs chose the last offered date of March

3    10th.

4            Throughout the rather truncated negotiations, the union

5    has e-mailed plaintiff on numerous occasions asking for more

6    availability, even offering to be available on weekends and

7    evenings.

8            Plaintiff's position that it was deprived of the

9    statutory notice period and an opportunity to work with the union

10   to avoid a strike has no merit and it ignores the plain meaning

11   of the statute and the intent of Congress.

12           In light of the facts, it is incredulous for

13   St. Charles to claim surprise at the existence of a dispute that

14   it has been negotiating since September of 2019.

15           Just a final note.  So at the heart of the plaintiff's

16   argument -- and I'm not unsympathetic to their position -- is

17   that a strike is going to create a huge financial burden on

18   St. Charles, but more significant, it is going to have adverse

19   consequences to the community that it serves.

20           And I know we're in the face of a pandemic, but to some

21   degree, the emergency that the plaintiff is describing at this

22   point is one of their own making.  The pandemic cannot be used as

23   an excuse to ignore the very workers who you want serving on your

24   front lines during this time.  But I do want both sides to

25   consider the consequences to the community.

1          I know that, you know, both sides disagree on a lot

2    when it comes to bargaining for, you know, wages and appropriate

3    conditions for the union members, but I think the one thing that

4    both sides can agree on is the care and health of the patients

5    that you serve.  And I don't think either side -- both sides may

6    be saying you don't care, but both sides do.  I know this.  You

7    know, I know this from, you know, knowing nurses and doctors and

8    I know this from knowing people who work in administration in

9    hospitals.  People care about their community.

10          And I'm just imploring you both to talk immediately, to

11    talk today about whether there is any capacity on your own,

12    without court intervention, clearly without the Board's

13    intervention at this stage, to postpone the strike for a short

14    period of time in order to get both of you to the table.

15          I'm not telling -- I can't order you to do it, but I'm

16    asking you to talk today about what can be done immediately, what

17    can you start agreeing on, can you at least go forward on a

18    couple of positions to get close enough to give both sides enough

19    comfort that this will be negotiated quickly.  So, again, I'm not

20    ordering you to do anything.

21          I'm finding the court does not have authority, it's

22    solely with the NLRB, but I am asking you to -- to in good faith

23    discuss today what can be done.

24          If you can't come to agreement, I get it.  There'll

25    be -- there's a pending strike coming up in a couple days, but

```
1    let's see what can be done.  And I anticipate everybody is

2    working hard and working fast on this, and working in very

3    difficult times and taking that into consideration.

4              So that is my ruling.  At this point, the court will be

5    in recess.  Thank you.

6              MR. HUTCHESON:  Thank you, Your Honor.

7              (Proceedings concluded at 9:26 a.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                    C E R T I F I C A T E

2

3          I certify by signing below that the foregoing is a true

4  and correct transcript of the record, taken by stenographic

5  means, to the best of my ability, of the

6  videoconference/telephonic proceedings in the above-entitled

7  cause.

8          Due to the video/telephonic connections of parties

9  appearing via videoconference, speakerphone, or cell phone,

10 speakers talking over one another, speakers failing to enunciate,

11 speakers not identifying themselves before they speak, and/or

12 other technical difficulties that occur during

13 videoconference/telephonic proceedings, this certification is

14 limited by the above-mentioned reasons and any technological

15 difficulties of such proceedings occurring over the video and/or

16 telephone.

17         A transcript without an original signature, conformed

18 signature, or digitally-signed signature is not certified.

19

20 DATED this 2nd day of March, 2021.

21

22                    /s/ Kellie M. Humiston_____

23                    Kellie M. Humiston, RMR, CRR
                      Official Court Reporter
24                    Certificates Expire:  9/2021

25
```

## /

**/s** [1] - 18:22

## 1

**10(j** [5] - 6:4, 10:8, 10:11, 10:14, 11:12
**10(j)** [1] - 12:18
**1000** [1] - 1:24
**1022** [1] - 2:7
**107** [1] - 6:14
**108** [1] - 6:14
**10th** [1] - 15:3
**1230** [1] - 13:7
**125** [1] - 13:7
**1300** [1] - 2:3
**14** [3] - 7:8, 7:9, 8:20
**150** [1] - 13:24
**160** [1] - 12:18
**17** [2] - 7:9, 8:20
**19** [1] - 6:7
**1940** [1] - 12:23
**1953** [2] - 12:24, 13:2
**1977** [1] - 8:2
**1978** [1] - 7:15
**1997** [1] - 13:7
**1st** [1] - 14:24

## 2

**2** [2] - 1:9, 3:1
**2019** [4] - 13:23, 14:9, 14:19, 15:14
**2020** [1] - 14:21
**2021** [4] - 1:9, 3:1, 14:22, 18:20
**20th** [1] - 14:22
**21-304** [1] - 3:7
**2400** [1] - 2:3
**261** [1] - 12:23
**29** [2] - 6:15, 12:18
**2nd** [2] - 14:25, 18:20

## 3

**30** [2] - 14:4, 14:16
**301** [1] - 1:24
**309** [1] - 12:23
**31st** [1] - 14:24
**326-8186** [1] - 1:25
**346** [1] - 13:2
**3rd** [1] - 14:21

## 4

**430** [1] - 2:7
**485** [1] - 13:2

## 5

**5017** [2] - 1:11, 3:9
**503** [1] - 1:25
**503-228-1889** [1] - 2:8
**503-241-2300** [1] - 2:4

## 6

**6:21-cv-00304-MC** [1] - 1:7

## 8

**8(d** [1] - 14:2
**8(g** [1] - 14:22

## 9

**9/2021** [1] - 18:24
**97201** [1] - 2:4
**97204** [1] - 1:24
**97205** [1] - 2:7
**9:02** [1] - 3:1
**9:26** [1] - 17:7

## A

**a.m** [2] - 3:1, 17:7
**ability** [1] - 18:5
**above-entitled** [1] - 18:6
**above-mentioned** [1] - 18:14
**absolutely** [1] - 10:10
**Act** [5] - 6:5, 6:12, 10:1, 11:3, 11:20
**act** [4] - 4:2, 7:4, 7:5, 13:10
**acted** [1] - 4:12
**action** [7] - 5:6, 6:1, 6:25, 8:22, 9:24, 9:25, 11:14
**acts** [2] - 11:19, 13:12
**additional** [1] - 4:21
**address** [2] - 4:21, 13:17
**administration** [1] - 16:8
**admit** [1] - 8:7
**adverse** [1] - 15:18
**advised** [1] - 6:7
**affecting** [1] - 7:1
**AFL** [1] - 1:11
**AFL-CIO** [1] - 1:11
**AFT** [1] - 1:11
**agency** [1] - 5:16
**agree** [3] - 5:23, 8:13, 16:4
**agreeing** [1] - 16:17

**agreement** [2] - 14:3, 16:24
**ahead** [1] - 9:17
**alleged** [4] - 9:25, 11:16, 11:18, 13:18
**alleging** [1] - 9:7
**allowed** [1] - 10:15
**Amalgamated** [1] - 12:22
**Ames** [2] - 2:3, 3:14
**analysis** [1] - 11:15
**AND** [1] - 1:10
**anticipate** [1] - 17:1
**Antonio** [1] - 13:5
**appear** [1] - 9:15
**appearing** [1] - 18:9
**application** [1] - 7:22
**apply** [6] - 9:23, 10:4, 10:5, 10:7, 10:25, 11:15
**appropriate** [1] - 16:2
**argument** [2] - 3:9, 15:16
**assert** [1] - 11:4
**attorney** [4] - 4:23, 6:23, 8:12, 13:10
**attorneys** [1] - 3:10
**authority** [9] - 4:2, 4:3, 12:8, 12:10, 12:17, 12:18, 12:20, 13:19, 16:21
**availability** [1] - 15:6
**available** [1] - 15:6
**Avenue** [2] - 1:24, 2:3
**avoid** [2] - 9:18, 15:10
**avoided** [1] - 7:23
**aware** [1] - 14:18

## B

**banner** [2] - 10:20, 10:24
**bargaining** [7] - 13:24, 14:3, 14:12, 14:13, 14:15, 14:17, 16:2
**based** [3] - 6:7, 10:22, 10:23
**BEFORE** [1] - 1:18
**beginning** [1] - 7:8
**behalf** [3] - 4:17, 5:6, 5:7
**below** [2] - 13:14, 18:3
**Bend** [1] - 12:4
**Benedict** [2] - 2:3, 3:14
**best** [1] - 18:5
**better** [1] - 9:21
**blocking** [1] - 9:1
**board** [1] - 11:13
**Board** [10] - 5:8, 5:11,

5:21, 5:25, 9:1, 10:11, 12:1, 12:20, 13:9
**Board's** [1] - 16:12
**brief** [5] - 4:5, 4:12, 6:17, 10:3, 10:9
**briefing** [4] - 8:8, 8:12, 8:14, 8:15
**briefly** [2] - 8:16, 13:14
**bringing** [2] - 5:5, 5:6
**broadly** [2] - 11:4, 14:7
**broadly-defined** [1] - 11:4
**buck** [1] - 8:11
**burden** [1] - 15:17
**Burlington** [1] - 10:17

## C

**California** [1] - 13:6
**cannot** [2] - 10:22, 15:22
**capable** [1] - 13:17
**capacity** [1] - 16:11
**care** [4] - 12:4, 16:4, 16:6, 16:9
**Carpenters** [2] - 8:2, 13:6
**case** [28] - 3:24, 4:11, 4:15, 4:19, 4:20, 4:22, 5:2, 6:20, 6:22, 6:25, 7:7, 7:11, 7:17, 7:18, 7:20, 8:19, 9:2, 9:6, 9:25, 10:3, 10:13, 10:14, 10:17, 11:10, 11:18, 12:23, 13:2
**Case** [2] - 1:7, 3:7
**cases** [7] - 5:10, 7:6, 7:8, 7:21, 9:3, 10:8, 10:18
**Catherine** [2] - 2:6, 3:19
**cell** [1] - 18:9
**certainly** [1] - 11:11
**Certificates** [1] - 18:24
**certification** [2] - 14:3, 18:13
**certified** [2] - 13:23, 18:18
**certify** [1] - 18:3
**charge** [1] - 5:24
**charged** [1] - 6:2
**Charles** [6] - 3:7, 9:6, 11:1, 13:25, 15:13, 15:18
**CHARLES** [1] - 1:5
**Chauffeurs** [1] - 13:1

**choose** [1] - 13:17
**chose** [1] - 15:2
**CIO** [1] - 1:11
**Circuit** [4] - 10:18, 11:6, 12:12, 13:3
**circumstances** [3] - 5:7, 13:9, 13:10
**cite** [1] - 7:9
**cited** [1] - 10:3
**cites** [1] - 10:9
**citing** [1] - 9:6
**City** [1] - 5:14
**claim** [3] - 10:24, 13:22, 15:13
**claims** [2] - 10:20, 10:21
**clear** [1] - 10:10
**clearly** [1] - 16:12
**CLERK** [2] - 3:4, 9:14
**close** [1] - 16:18
**colleague** [1] - 3:14
**colleagues** [1] - 8:9
**comfort** [1] - 16:19
**coming** [2] - 12:14, 16:25
**command** [2] - 9:4, 9:5
**comment** [1] - 4:6
**Community** [1] - 13:5
**community** [3] - 15:19, 15:25, 16:9
**Company** [1] - 12:22
**complaint** [4] - 4:21, 5:19, 6:3, 13:15
**complicated** [2] - 6:9, 13:13
**comply** [1] - 6:15
**computer** [2] - 9:9, 9:17
**concede** [1] - 11:24
**concern** [2] - 8:22, 12:6
**concerned** [1] - 12:11
**concerning** [1] - 14:7
**concluded** [1] - 17:7
**conditions** [2] - 14:8, 16:3
**conduct** [1] - 7:24
**conformed** [1] - 18:17
**congress** [1] - 12:16
**Congress** [2] - 12:19, 15:11
**Congress'** [1] - 9:4
**connection** [1] - 9:17
**connections** [1] - 18:8
**consequences** [2] - 15:19, 15:25
**consider** [1] - 15:25
**consideration** [1] -

17:3
**considered** [3] - 10:21, 10:23
**Consolidated** [1] - 12:22
**constantly** [1] - 5:11
**content** [1] - 10:24
**continuity** [1] - 12:4
**contradict** [1] - 10:6
**control** [1] - 9:5
**controversy** [1] - 14:7
**corporation** [1] - 1:6
**correct** [1] - 18:4
**Council** [1] - 13:6
**couple** [2] - 16:18, 16:25
**course** [1] - 11:11
**court** [23] - 4:1, 4:4, 4:8, 4:10, 4:16, 4:20, 4:23, 5:2, 5:3, 6:4, 9:3, 10:21, 11:12, 11:18, 12:24, 13:9, 13:11, 13:12, 13:18, 13:19, 16:12, 16:21, 17:4
**COURT** [26] - 1:1, 1:19, 1:23, 3:10, 3:15, 3:18, 3:21, 5:11, 5:22, 6:18, 6:22, 7:4, 7:12, 7:14, 7:16, 8:3, 8:6, 8:10, 8:14, 8:18, 9:8, 9:19, 9:21, 11:6, 11:22, 12:6
**Court** [9] - 1:23, 3:4, 7:2, 8:15, 9:23, 10:1, 12:7, 12:19, 18:23
**Court's** [1] - 12:10
**courts** [3] - 11:7, 12:25, 13:4
**create** [1] - 15:17
**creates** [1] - 8:22
**criminal** [1] - 13:12
**critical** [1] - 4:7
**CRR** [2] - 1:23, 18:23

## D

**date** [3] - 10:9, 10:18, 15:2
**DATED** [1] - 18:20
**dates** [2] - 10:17, 15:2
**DAVIS** [1] - 2:2
**days** [3] - 14:4, 14:16, 16:25
**deadline** [3] - 4:6, 5:12, 12:14
**deal** [1] - 7:1
**dealing** [2] - 6:12, 11:25

**December** [1] - 14:21
**decide** [1] - 12:1
**decision** [4] - 4:18, 12:13, 13:7
**decisions** [2] - 7:2, 7:9
**declarable** [1] - 6:25
**defamation** [1] - 10:23
**DEFENDANT** [1] - 2:6
**Defendant** [1] - 1:12
**defendant** [2] - 14:1, 14:22
**defendants** [1] - 13:24
**defense** [1] - 3:18
**defined** [2] - 11:4, 14:7
**degree** [1] - 15:21
**delay** [1] - 5:6
**Department** [1] - 5:15
**deprived** [1] - 15:8
**describing** [1] - 15:21
**determine** [1] - 12:20
**determining** [1] - 3:24
**difficult** [1] - 17:3
**difficulties** [2] - 18:12, 18:15
**digitally** [1] - 18:18
**digitally-signed** [1] - 18:18
**dire** [1] - 5:7
**disagree** [1] - 16:1
**discuss** [2] - 13:14, 16:23
**discussion** [1] - 3:23
**dispute** [12] - 3:25, 13:13, 13:14, 13:18, 14:5, 14:6, 14:9, 14:13, 14:14, 14:18, 14:19, 15:13
**disputes** [5] - 4:10, 11:8, 12:17, 12:25, 13:5
**disruption** [1] - 12:4
**DISTRICT** [3] - 1:1, 1:2, 1:19
**District** [4] - 1:23, 3:4, 3:5, 13:6
**DIVISION** [1] - 1:3
**doctors** [1] - 16:7
**Doctrine** [1] - 7:22
**doctrine** [2] - 7:23, 10:12
**Document** [1] - 7:9
**done** [7] - 8:8, 8:10, 8:11, 13:19, 16:16, 16:23, 17:1
**down** [1] - 6:3
**drafting** [1] - 12:19
**Due** [1] - 18:8

**during** [2] - 15:24, 18:12

## E

**e-mailed** [1] - 15:5
**early** [1] - 14:9
**Edison** [1] - 12:22
**either** [4] - 6:2, 9:23, 13:11, 16:5
**emergency** [1] - 15:21
**employer** [5] - 5:13, 6:23, 7:5, 8:3, 11:18
**employment** [1] - 14:8
**engage** [1] - 14:23
**enjoin** [3] - 4:24, 13:10, 13:12
**enjoining** [1] - 11:19
**entitled** [1] - 18:6
**enunciate** [1] - 18:10
**equitable** [2] - 11:1, 11:4
**especially** [2] - 5:19, 7:23
**EUGENE** [1] - 1:3
**Eugene** [1] - 1:10
**evenings** [1] - 15:7
**exactly** [1] - 7:7
**example** [4] - 8:24, 10:13, 11:16, 11:21
**exception** [1] - 13:8
**exceptions** [2] - 11:9, 11:10
**exclusive** [5] - 10:11, 10:15, 11:2, 12:16, 12:20
**excuse** [1] - 15:23
**exercise** [1] - 11:1
**existence** [2] - 14:4, 15:13
**expect** [1] - 12:1
**experience** [1] - 4:9
**Expire** [1] - 18:24

## F

**F-7** [2] - 14:1, 14:20
**F.3rd** [1] - 13:7
**face** [1] - 15:20
**facing** [1] - 5:7
**fact** [1] - 4:13
**facts** [4] - 7:17, 7:20, 15:12
**factual** [2] - 3:24, 13:23
**failed** [1] - 4:11
**failing** [1] - 18:10
**faith** [1] - 16:22
**Farmer** [1] - 8:1
**fast** [1] - 17:2

**February** [2] - 14:24, 14:25
**federal** [12] - 4:8, 4:16, 4:23, 5:3, 5:16, 6:4, 8:23, 9:24, 11:7, 11:15, 12:24, 13:4
**FEDERATION** [1] - 1:10
**Federation** [2] - 3:8, 3:20
**feedback** [2] - 9:9, 9:18
**few** [1] - 9:14
**Fifth** [1] - 2:3
**file** [2] - 4:5, 5:24
**filed** [5] - 4:7, 5:2, 13:15, 14:1, 14:22
**filing** [1] - 14:20
**final** [1] - 15:15
**financial** [1] - 15:17
**findings** [2] - 12:9, 13:23
**first** [6] - 4:1, 4:3, 4:19, 4:25, 5:23, 10:5
**following** [4] - 12:9, 13:22, 14:3, 14:19
**FOR** [3] - 1:2, 2:2, 2:6
**foregoing** [1] - 18:3
**form** [2] - 14:1, 14:20
**formation** [1] - 14:12
**formed** [1] - 14:17
**forward** [1] - 16:17
**frankly** [2] - 4:9, 8:15
**freeze** [2] - 10:25, 11:3
**front** [1] - 15:24
**Fruit** [1] - 8:25
**full** [2] - 10:20, 10:23
**fully** [1] - 12:1

## G

**Garmon** [2] - 7:6, 7:22
**Garner** [1] - 13:1
**general** [3] - 4:23, 6:23, 13:10
**generally** [2] - 11:7, 13:4
**given** [1] - 14:5
**Gould** [1] - 10:13
**grant** [1] - 13:19
**granted** [3] - 4:14, 12:18, 12:20
**granting** [1] - 5:1
**great** [1] - 3:18
**Guardia** [2] - 6:12, 11:3, 11:20
**guess** [1] - 4:3
**guidance** [1] - 13:18

## H

**hard** [1] - 17:2
**head** [1] - 7:20
**headphones** [1] - 9:12
**Health** [3] - 3:8, 3:20
**HEALTH** [2] - 1:5, 1:10
**health** [3] - 7:1, 9:3, 16:4
**hear** [3] - 8:16, 8:17, 9:20
**hearing** [2] - 3:17, 5:1
**heart** [1] - 15:15
**held** [2] - 12:19, 13:3
**Helpers** [1] - 13:1
**HIGHET** [8] - 2:6, 3:19, 8:17, 8:19, 9:11, 9:20, 9:22, 11:11
**Highet** [7] - 2:6, 3:20, 3:21, 5:4, 5:24, 8:16, 9:8
**Home** [1] - 9:2
**honest** [1] - 8:15
**Honor** [8] - 3:13, 3:19, 4:25, 8:7, 8:17, 8:21, 9:20, 17:6
**HONORABLE** [1] - 2:1
**Honorable** [1] - 3:5
**hoops** [1] - 6:14
**hoping** [1] - 12:3
**Hospital** [1] - 13:5
**hospital** [2] - 5:7, 10:19
**hospitals** [1] - 16:9
**huge** [2] - 3:24, 15:17
**Humiston** [3] - 1:23, 18:22, 18:23
**Hutcheson** [4] - 2:2, 3:14, 4:7, 8:10
**HUTCHESON** [16] - 3:13, 3:16, 4:25, 5:21, 5:23, 6:19, 6:24, 7:6, 7:13, 7:15, 7:19, 8:5, 8:7, 8:13, 11:24, 17:6

## I

**identify** [1] - 14:13
**identifying** [1] - 18:11
**ignore** [1] - 15:23
**ignores** [1] - 15:10
**immediate** [1] - 4:8
**immediately** [3] - 5:3, 16:10, 16:16
**imploring** [1] - 16:10
**IN** [1] - 1:1
**INC** [1] - 1:5

**include** [1] - 7:10
**includes** [1] - 14:7
**including** [2] - 7:7, 8:9
**incredulous** [1] - 15:12
**independent** [1] - 11:14
**indiscernible** [6] - 8:14, 8:21, 9:7, 11:13, 12:25, 13:13
**indiscernible)** [1] - 9:7
**inflexible** [1] - 7:21
**informal** [1] - 14:23
**initial** [1] - 14:3
**injunction** [2] - 11:12, 12:17
**injunctions** [2] - 11:8, 13:4
**injunctive** [9] - 4:8, 4:14, 4:16, 6:5, 6:13, 8:4, 10:12, 10:16, 10:22
**intended** [1] - 12:16
**intent** [2] - 14:12, 15:11
**interest** [3] - 7:24, 7:25, 9:23
**interference** [1] - 8:1
**intervene** [1] - 12:10
**intervention** [2] - 16:12, 16:13
**introduce** [1] - 3:11
**investigates** [1] - 5:25
**involving** [2] - 10:19, 12:17
**issue** [8] - 4:1, 6:3, 6:24, 7:24, 8:16, 8:20, 11:12, 12:11
**issuing** [2] - 11:8, 13:4
**itself** [3] - 12:15, 13:9, 13:14

**J**

**January** [2] - 14:22, 14:24
**job** [1] - 5:9
**Joint** [1] - 9:1
**JUDGE** [1] - 1:19
**judge** [1] - 6:25
**jump** [1] - 6:13
**Junction** [1] - 5:14
**jurisdiction** [1] - 6:13

**K**

**Kaplan's** [1] - 8:25
**Kellie** [3] - 1:23, 18:22, 18:23

**kicked** [1] - 3:16
**knowing** [2] - 16:7, 16:8

**L**

**labor** [10] - 4:9, 11:8, 12:17, 12:21, 12:25, 13:5, 13:13, 14:5, 14:6, 14:13
**Labor** [8] - 5:8, 5:11, 5:21, 5:25, 6:4, 10:1, 12:1
**laid** [1] - 6:14
**last** [2] - 14:21, 15:2
**LAW** [1] - 2:6
**law** [16] - 4:11, 4:22, 8:22, 8:23, 8:24, 8:25, 9:3, 9:24, 10:5, 10:15, 11:5, 11:10, 11:15, 13:8
**least** [2] - 14:4, 16:17
**legislative** [2] - 9:4, 9:5
**light** [1] - 15:12
**limited** [1] - 18:14
**lines** [1] - 15:24
**listening** [1] - 9:16
**LOCAL** [1] - 1:11
**local** [1] - 5:14
**Local** [2] - 3:9, 13:1
**logging** [1] - 3:17
**look** [1] - 11:4

**M**

**mailed** [1] - 15:5
**March** [4] - 1:9, 3:1, 15:2, 18:20
**Mark** [2] - 2:2, 3:14
**matter** [2] - 12:10, 13:11
**McShane** [1] - 3:6
**MCSHANE** [1] - 1:18
**mean** [1] - 11:8
**meaning** [1] - 15:10
**means** [1] - 18:5
**mediator** [2] - 15:1
**meet** [2] - 11:19, 14:25
**meeting** [1] - 3:17
**members** [1] - 16:3
**mention** [1] - 4:11
**mentioned** [1] - 18:14
**merit** [4] - 5:20, 6:1, 6:2, 15:10
**merits** [3] - 12:1, 13:16, 13:22
**met** [1] - 14:21
**Michael** [1] - 3:5
**MICHAEL** [1] - 1:18

**might** [1] - 8:23
**miss** [1] - 9:8
**Miss** [2] - 3:21, 5:4
**modern** [1] - 4:22
**month** [1] - 14:1
**morning** [2] - 3:13, 3:19
**motion** [1] - 4:8
**MR** [16] - 3:13, 3:16, 4:25, 5:21, 5:23, 6:19, 6:24, 7:6, 7:13, 7:15, 7:19, 8:5, 8:7, 8:13, 11:24, 17:6
**MS** [7] - 3:19, 8:17, 8:19, 9:11, 9:20, 9:22, 11:11
**multiple** [1] - 10:21
**must** [1] - 9:23
**mute** [1] - 9:17
**muted** [1] - 9:15

**N**

**name** [1] - 3:13
**National** [2] - 6:4, 10:1
**national** [1] - 11:12
**nature** [1] - 14:19
**near** [1] - 9:9
**need** [2] - 12:2, 12:13
**needing** [1] - 5:8
**negotiated** [2] - 14:20, 16:19
**negotiating** [1] - 15:14
**negotiations** [1] - 15:4
**new** [2] - 14:11, 14:13
**New** [3] - 6:20, 9:2, 12:23
**newly** [1] - 14:17
**Ninth** [4] - 10:18, 11:6, 12:12, 13:3
**NLRA** [8] - 10:6, 10:7, 10:22, 11:2, 11:7, 12:19, 13:3, 14:6
**NLRB** [9] - 4:17, 4:21, 5:6, 11:2, 12:16, 12:18, 13:17, 13:23, 16:22
**nonprofit** [1] - 1:5
**normal** [2] - 5:24, 6:5
**Norris** [2] - 11:3, 11:20
**Norris-La** [2] - 11:3, 11:20
**Norris–La** [1] - 6:12
**Northern** [1] - 10:17
**note** [1] - 15:15
**nothing** [1] - 10:6
**notice** [4] - 14:2, 14:4, 14:23, 15:9
**noticed** [1] - 14:10

**numerous** [2] - 7:2, 15:5
**nurses** [1] - 16:7
**Nurses** [2] - 3:8, 3:20
**NURSES** [1] - 1:10
**Nursing** [1] - 9:1

**O**

**occasions** [1] - 15:5
**occur** [1] - 18:12
**occurring** [1] - 18:15
**OF** [3] - 1:2, 1:10, 1:15
**offered** [1] - 15:2
**offering** [1] - 15:6
**office** [2] - 6:8, 8:9
**Official** [1] - 18:23
**OFNHP** [1] - 11:16
**once** [1] - 4:14
**one** [9] - 7:4, 7:25, 9:2, 9:11, 10:19, 10:21, 15:22, 16:3, 18:10
**onus** [1] - 14:16
**opinion** [1] - 12:11
**opportunity** [2] - 5:4, 15:9
**OR** [2] - 2:4, 2:7
**oral** [1] - 3:9
**order** [2] - 16:14, 16:15
**ordering** [1] - 16:20
**OREGON** [2] - 1:2, 1:10
**Oregon** [7] - 1:5, 1:10, 1:24, 3:5, 3:8, 3:20, 12:5
**organization** [1] - 14:5
**original** [1] - 18:17
**outset** [1] - 5:1
**outside** [1] - 4:22
**own** [2] - 15:22, 16:11

**P**

**page** [1] - 7:8
**pages** [1] - 8:20
**pandemic** [2] - 15:20, 15:22
**participating** [1] - 9:15
**particular** [1] - 10:19
**parties** [5] - 12:3, 14:14, 14:20, 14:21, 18:8
**party** [4] - 4:15, 4:20, 4:22, 6:2
**passing** [1] - 8:11
**patient** [1] - 12:4
**patients** [1] - 16:4
**pause** [3] - 7:8, 7:10,

7:11
**pause-referring)** [2] - 7:8, 7:11
**pending** [1] - 16:25
**people** [4] - 8:8, 9:14, 16:8, 16:9
**perfect** [1] - 4:13
**perfectly** [1] - 13:17
**perhaps** [1] - 3:23
**period** [3] - 14:14, 15:9, 16:14
**petitions** [2] - 13:9, 13:11
**phone** [3] - 9:9, 9:17, 18:9
**picketing** [1] - 14:23
**place** [1] - 7:10
**plain** [1] - 15:10
**Plaintiff** [1] - 1:7
**PLAINTIFF** [1] - 2:2
**plaintiff** [10] - 3:12, 4:3, 10:8, 11:23, 13:15, 13:21, 14:18, 14:25, 15:5, 15:21
**plaintiff's** [3] - 4:2, 15:8, 15:15
**plaintiffs** [3] - 12:12, 13:20, 15:2
**point** [2] - 15:22, 17:4
**Portland** [4] - 1:24, 2:4, 2:7, 6:8
**position** [3] - 4:11, 15:8, 15:16
**positions** [1] - 16:18
**post** [3] - 10:9, 10:17, 10:18
**post-date** [2] - 10:9, 10:18
**post-dates** [1] - 10:17
**postpone** [1] - 16:13
**power** [1] - 9:11
**powers** [3] - 7:1, 11:1, 11:4
**practice** [1] - 12:21
**preempted** [1] - 10:15
**preemption** [10] - 7:22, 8:20, 8:21, 9:22, 10:2, 10:4, 10:12, 10:14, 11:15, 13:11
**preliminary** [1] - 6:10
**presiding** [1] - 3:6
**prevent** [2] - 12:4, 14:11
**procedure** [1] - 6:6
**Proceedings** [1] - 17:7
**PROCEEDINGS** [1] - 1:15
**proceedings** [3] -

18:6, 18:13, 18:15
**process** [1] - 5:24
**Produce** [1] - 8:25
**Professionals** [2] - 3:9, 3:20
**PROFESSIONALS** [1] - 1:10
**prohibited** [1] - 12:25
**prohibits** [2] - 11:7, 13:4
**provided** [1] - 15:1
**provides** [2] - 11:2, 14:2
**public** [1] - 9:3
**public's** [1] - 7:1
**purpose** [1] - 14:11
**put** [1] - 9:12
**puts** [1] - 14:16
**putting** [1] - 8:8

**Q**

**quick** [1] - 12:14
**quickly** [2] - 4:12, 16:19
**quite** [3] - 4:9, 8:14, 11:3
**quote** [1] - 13:3
**quoting** [2] - 8:1, 12:21

**R**

**rather** [1] - 15:4
**rats** [1] - 10:20
**read** [2] - 4:12, 6:17
**realized** [1] - 4:15
**really** [4] - 4:1, 5:18, 12:7, 14:16
**reasons** [2] - 10:4, 18:14
**recess** [1] - 17:5
**recognition** [1] - 14:4
**record** [4] - 3:11, 5:17, 8:12, 18:4
**referring** [1] - 7:10
**referring** [2] - 7:8, 7:11
**regard** [1] - 12:9
**Region** [1] - 6:7
**regulation** [1] - 7:24
**regulatory** [1] - 8:1
**relating** [1] - 7:6
**Relations** [2] - 6:5, 10:1
**relatively** [1] - 5:15
**relevant** [1] - 7:18
**relief** [11] - 4:8, 4:14, 4:17, 5:13, 6:5, 6:13, 8:4, 10:12, 10:16,

10:22, 13:20
**remember** [2] - 6:19, 7:7
**removal** [1] - 6:22
**removed** [1] - 5:3
**reply** [2] - 6:17, 11:22
**REPORTER** [1] - 1:23
**Reporter** [1] - 18:23
**request** [2] - 4:2, 7:5
**requested** [1] - 13:20
**required** [1] - 5:18
**requirements** [1] - 11:20
**requires** [1] - 14:13
**resolve** [1] - 14:14
**resources** [1] - 6:10
**respond** [1] - 5:18
**response** [2] - 4:14, 5:18
**responsibility** [1] - 8:12
**rest** [1] - 8:20
**RMR** [2] - 1:23, 18:23
**robust** [1] - 5:15
**Roebuck** [4] - 7:11, 7:17, 8:5, 8:19
**Room** [1] - 1:24
**rule** [3] - 10:10, 10:11
**ruling** [2] - 6:10, 17:4
**rushed** [1] - 4:5

**S**

**safety** [1] - 7:2
**Salmon** [1] - 2:7
**San** [1] - 13:5
**Sanitation** [1] - 5:15
**Sarah** [2] - 2:3, 3:14
**saw** [1] - 4:14
**scheduled** [1] - 6:11
**scheme** [1] - 8:1
**Sears** [9] - 7:11, 7:17, 8:5, 8:19, 8:24, 10:3, 10:9, 10:17, 10:18
**Seattle** [1] - 6:8
**second** [2] - 5:5, 10:8
**section** [5] - 6:4, 12:18, 14:2, 14:11
**sections** [1] - 6:14
**see** [3] - 3:15, 9:14, 17:1
**seeing** [1] - 3:24
**seek** [7] - 4:16, 5:13, 6:5, 10:12, 11:19, 12:12, 13:18
**seeking** [3] - 4:23, 5:6, 8:3
**sense** [1] - 4:13
**September** [4] - 13:23, 14:9, 14:19, 15:14

**serve** [1] - 16:5
**serves** [1] - 15:19
**serving** [1] - 15:23
**session** [1] - 3:5
**set** [1] - 3:7
**several** [1] - 15:1
**shall** [1] - 14:5
**short** [2] - 4:6, 16:13
**side** [1] - 16:5
**sides** [8] - 12:13, 14:6, 15:24, 16:1, 16:4, 16:5, 16:6, 16:18
**signature** [3] - 18:17, 18:18
**signed** [1] - 18:18
**significant** [1] - 15:18
**signing** [1] - 18:3
**similar** [1] - 6:20
**situation** [3] - 6:20, 7:1, 11:24
**solely** [1] - 16:22
**sometimes** [1] - 9:10
**sorry** [1] - 7:16
**Southern** [1] - 13:6
**speakerphone** [1] - 18:9
**speakers** [3] - 18:10, 18:11
**specific** [1] - 11:5
**St** [6] - 3:7, 9:6, 11:1, 13:25, 15:13, 15:18
**ST** [1] - 1:5
**stage** [1] - 16:13
**standing** [1] - 11:2
**start** [2] - 6:11, 16:17
**starting** [1] - 3:11
**State** [3] - 7:23, 8:4, 9:1
**state** [10] - 5:2, 8:22, 8:24, 9:2, 9:23, 9:24, 10:5, 10:15, 11:14
**state's** [1] - 9:4
**State's** [1] - 7:25
**STATES** [2] - 1:1, 1:19
**States** [2] - 1:23, 3:4
**stating** [1] - 14:23
**statute** [1] - 15:11
**statutory** [1] - 15:9
**stay** [1] - 12:12
**stenographic** [1] - 18:4
**stepping** [1] - 6:23
**still** [1] - 12:7
**stop** [2] - 6:2, 10:23
**Street** [1] - 2:7
**strike** [8] - 4:24, 6:11, 12:14, 14:12, 15:10, 15:17, 16:13, 16:25
**strikes** [1] - 5:12

**subregional** [1] - 6:8
**substantial** [1] - 7:24
**suggests** [1] - 11:8
**Suite** [2] - 2:3, 2:7
**Supreme** [2] - 7:2, 12:19
**surprise** [1] - 15:13
**SW** [3] - 1:24, 2:3, 2:7
**System** [1] - 3:8
**SYSTEM** [1] - 1:5

**T**

**table** [3] - 14:15, 14:17, 16:14
**Teamsters** [1] - 13:1
**technical** [1] - 18:12
**technicians** [1] - 13:24
**technological** [1] - 18:14
**telephone** [1] - 18:16
**ten** [1] - 5:12
**ten-day** [1] - 5:12
**tenure** [1] - 14:8
**terms** [2] - 12:14, 14:8
**testifying** [1] - 3:23
**THE** [30] - 1:1, 1:2, 1:18, 2:2, 2:6, 3:4, 3:10, 3:15, 3:18, 3:21, 5:11, 5:22, 6:18, 6:22, 7:4, 7:12, 7:14, 7:16, 8:3, 8:6, 8:10, 8:14, 8:18, 9:8, 9:14, 9:19, 9:21, 11:6, 11:22, 12:6
**themselves** [2] - 3:11, 18:11
**therapists** [1] - 13:25
**there'll** [1] - 16:24
**Third** [1] - 1:24
**third** [3] - 4:15, 4:20, 4:22
**threaten** [1] - 7:25
**threatening** [1] - 11:17
**throughout** [1] - 15:4
**Thursday** [1] - 6:10
**today** [7] - 3:23, 7:5, 12:13, 16:11, 16:16, 16:23
**together** [1] - 8:8
**ton** [1] - 4:9
**took** [1] - 9:5
**top** [1] - 7:20
**traffic** [1] - 9:1
**transcript** [2] - 18:4, 18:17
**TRANSCRIPT** [1] - 1:15

**TREMAINE** [1] - 2:2
**trespassing** [2] - 8:25, 11:20
**true** [2] - 7:3, 18:3
**trump** [1] - 8:23
**truncated** [1] - 15:4
**two** [2] - 10:4, 10:20
**typically** [1] - 4:10

**U**

**U.S** [2] - 12:23, 13:2
**U.S.C** [2] - 6:15, 12:18
**unaffected** [1] - 10:12
**unclear** [1] - 5:17
**under** [6] - 5:11, 6:4, 9:24, 11:11, 11:14, 14:6
**underlying** [1] - 12:1
**undue** [1] - 7:25
**unfair** [1] - 12:21
**union** [7] - 5:2, 6:1, 14:17, 15:11, 15:4, 15:9, 16:3
**Union** [1] - 13:2
**unit** [4] - 13:24, 14:3, 14:12, 14:13
**UNITED** [2] - 1:1, 1:19
**United** [2] - 1:23, 3:4
**unlikely** [2] - 13:15, 13:21
**unsympathetic** [1] - 15:16
**unusual** [3] - 5:12, 11:24, 11:25
**up** [2] - 12:14, 16:25
**Utility** [1] - 12:22

**V**

**vacation** [1] - 4:13
**via** [1] - 18:9
**video** [3] - 10:24, 11:3, 18:15
**video/telephonic** [1] - 18:8
**Videoconference** [1] - 1:16
**videoconference** [1] - 18:9
**videoconference/ telephonic** [2] - 18:6, 18:13
**violation** [1] - 11:5
**violence** [2] - 11:17, 11:19
**vs** [6] - 1:9, 3:8, 8:1, 12:22, 13:1, 13:5

## W

**wages** [1] - 16:2
**wealth** [1] - 4:11
**weekends** [1] - 15:6
**whatsoever** [1] - 4:2
**win** [2] - 13:15, 13:22
**Wisconsin** [1] - 10:13
**wish** [1] - 12:12
**witnesses** [1] - 3:23
**Workers** [1] - 12:22
**workers** [1] - 15:23
**WRIGHT** [1] - 2:2
**written** [1] - 12:11

## Y

**year** [3] - 7:12, 7:13,
 14:21
**York** [3] - 6:20, 9:2,
 12:23