**Catherine A. Highet** (OSB No. 071306)
HIGHET LAW LLC
1022 SW Salmon Street, Suite 430
Portland, OR 97205
Tel: (503) 228-1889 / Fax: (503) 223-4518
cathy@highetlaw.com

*Attorney for Defendant*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| ST. CHARLES HEALTH SYSTEM, INC., an Oregon nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>OREGON FEDERATION OF NURSES AND HEALTH PROFESSIONALS, LOCAL 5017, AFT, AFL-CIO,<br><br>Defendant. | Case No.  6:21-cv-00304-MC<br>**DEFENDANT'S MOTION FOR SANCTIONS**<br><br>(Deschutes County Circuit Court, Case No. 21CV07024)<br><br>*Oral Argument Requested* |

For the reasons set out below, Defendant Oregon Federation of Nurses and Health Professionals ("OFNHP") respectfully requests that this court sanction Plaintiff St. Charles Health System, Inc. ("St. Charles") for its efforts to obtain a Temporary Restraining Order against OFNHP.  OFNHP requests a finding that St. Charles's conduct was in bad faith or tantamount to bad faith, as well as an award of reasonable costs and attorney fees.  St. Charles opposes this motion.

## I. INTRODUCTION

OFNHP respectfully requests that this court issue sanctions pursuant to its inherent authority against St. Charles for knowingly misleading this court about the court's authority to issue a Temporary Restraining Order at St. Charles's request.

It is a cornerstone of modern American labor law that Congress intentionally removed the courts from labor disputes because Congress believed the courts had a history of abusing the injunctive power.  It is beyond dispute that only the National Labor Relations Board can ask courts to remedy Unfair Labor Practices under the NLRA.  It is beyond dispute that labor injunctions, when they can issue at all, must comply with the Norris-LaGuardia Act.  Yet St. Charles asked this court to enjoin a strike without disclosing either of these bedrock principles. Section III(B), *infra.*

St. Charles's motion was not a good faith argument to change the law, because St. Charles withheld rather than discussed the controlling Supreme Court and statutory authorities. Section III(C).  St. Charles was not ignorant of these fundamental requirements, because St. Charles is represented by one of the country's top labor attorneys.  The firm representing St. Charles has also used this tactic before.  When confronted with the controlling authorities, St. Charles doubled down rather than withdrawing or modifying its request.  Section III(D).

St. Charles assumed a heightened duty of candor towards the court because it sought an immediate TRO, knowing that posture would limit or possibly eliminate OFNHP's ability to research and respond to St. Charles's motion.  Section III(E).  St. Charles's failure to disclose controlling authority could have led this court to disobey a direct command of Congress, one meant to remedy a history of court abuse.  Section III(F).

Given the procedural posture of this case, the court's inherent authority is the appropriate tool to address St. Charles's misconduct. Section III(A). OFNHP asks for reasonable attorney fees and costs – fees at the Economic Survey rate only for time spent opposing St. Charles's TRO. Section III(G).

## II.     FACTS AND PROCEDURAL POSTURE

### A.     Statement of Facts

In September 2019, the NLRB certified OFNHP as the bargaining representative for a unit of about 150 technicians and therapists working for St. Charles. Transcript of Hearing on Temporary Restraining Order, Docket No. 17, p. 13 ("Tr. 13"). Later that month, OFNHP filed a notice with the FMCS that this court has found constituted a proper Section 8(d)(B) notice. Tr. 14-15; *see* 29. U.S.C. § 158(d)(B).

The parties bargained for over a year, through December 3, 2020. Tr. 14; Declaration of David Stylianou in Opposition to TRO, Docket No. 12 ("Stylianou Decl.") ¶¶ 6-10. On December 3, St. Charles cancelled the next bargaining session and refused to reschedule it. Stylianou Decl. ¶¶ 10-14; Stylianou Exs. 5-7 *see also* Tr. 14-15. OFNHP repeatedly urged St. Charles to return to the table, offering to meet evenings or weekends, to no avail. *Id.*

In January and February, 2021, OFNHP noticed and engaged in informational picketing. Tr. 14. St. Charles subsequently offered to bargain, but only through a mediator, only once, and on the latest day the mediator offered. Stylianou Decl. ¶¶ 14-21; Stylianou Exs. 8-11; Tr. 14-15.

On February 22, 2021, OFNHP notified St. Charles and the relevant government agencies that it would go on strike March 4. Stylianou Ex. 12.

### B. Procedural Posture

The next day, February 23, St. Charles filed an Unfair Labor Practice ("ULP") charge with the National Labor Relations Board ("Board") alleging that OFNHP's intended strike would violate Section 8(d)(B) of the National Labor Relations Act ("NLRA"). Berry Decl. Ex. 2, Docket No. 1-1, p. 26.[1]

St. Charles asked the Board to seek an injunction against the strike under Section 10(j) of the NLRA: "St. Charles seeks immediate 10j relief to prevent this strike until proper notice is given." *Id.* The Board has so far declined to seek injunctive relief. Tr. 13.

At 4:49 p.m. on Thursday, February 25, St. Charles filed a petition for a Temporary Restraining Order in Deschutes County Circuit Court. Docket No. 1-1, p. 2. The sole basis for St. Charles's Complaint was the alleged ULP. Docket No. 1-1, p. 4 *citing* 29 U.S.C. § 158(d)(B). Yet St. Charles did not disclose to the court the well-established doctrine that only the Board can seek injunctive relief for a ULP. Docket No. 1-1, p. 13-15; Section III(B), *infra.* Nor did St. Charles disclose that the federal Norris-LaGuardia Act and its Oregon equivalent set out strict requirements for injunctions affecting labor disputes. *Id.*

The next morning, Friday February 26 at 10:21 a.m., OFNHP removed to this court. Docket No. 1.

At noon, St. Charles filed in this court a "Supplemental Authority" with additional argument in support of motion. Docket No. 2. The Supplemental Authority still did not disclose the Board's exclusive power or Norris LaGuardia. *Id.*

---

[1] The date of filling is not on the copy of the charge that is in evidence but it can be found in the docket for the charge. The charge number is 19-CB-273152, and its docket is at https://www.nlrb.gov/case/19-CB-273152.

At 1:49 p.m., St. Charles requested a hearing later that afternoon. Highet Ex. 1, p. 2-3. OFNHP objected and requested an opportunity to file an opposition brief. *Id.* at p. 2. The court scheduled a hearing for 9 a.m. Tuesday, March 2 and granted OFNHP permission to file its brief by Monday at 9 a.m. *Id.* at p. 1-2.

OFNHP's response argued that under Section 10(j) of the NLRA, only the Board may seek injunctive relief for a ULP. Docket No. 12, p. 4-9. OFNHP also argued St. Charles had not satisfied the requirements of the Norris-LaGuardia Act. *Id.* at 9-11.

At 3:01 p.m. St. Charles filed a Reply. Docket No. 14. As discussed further below, the Reply still did not acknowledge binding Supreme Court precedent squarely rejecting St. Charles's position, even though OFNHP's cited and explained those cases. Section III(B), *infra*.

This court held a hearing on St. Charles's Motion the morning of Tuesday, March 2. Tr. 3. The court twice asked counsel for St. Charles to name one case that authorized St. Charles to seek the TRO it requested. Tr. 4, 7. Counsel could not do so. Tr. 7, *see also* tr. 4-8. The court denied St. Charles's Motion from the bench. Tr. 12-17.

On March 4, St. Charles filed a Notice of Voluntary Dismissal. Docket No. 18. OFNHP did not join in the Notice and has not entered into any agreement settling this case. Highet Decl. ¶¶ 4-5. OFNHP does not contend it can oppose the Notice of Dismissal, given that no Motion for Summary Judgment or Answer has been filed. *See* FRCP 41(a)(1)(A)(i). However, as discussed further below, the law is clear that dismissal does not terminate this court's ability to issue sanctions.

On March 9, the court dismissed this case. Docket No. 19. Although OFNHP does not believe that FRCP 54 necessarily requires submission of the instant motion within two weeks of the court's entry of dismissal, OFNHP has adhered to that timeline.

Meanwhile, on March 4, the employees represented by OFNHP did begin the strike described in their February 22 notice.  Highet Decl. ¶ 3.  On the night of March 12, OFNHP and St. Charles entered into a "Return to Work" agreement.  Highet Decl. ¶ 4; Highet Ex. 2.  Under the agreement, OFNHP-represented employees will return to work through at least the end of March.  *Id.*  St. Charles will meet with OFNHP to bargain on eight dates during that time.  *Id.*  The agreement does not address this case.  *Id.*

III.  **ARGUMENT**

    A.  **This court has inherent authority to sanction St. Charles's misconduct.**

        1.  *Inherent authority is the appropriate mechanism in this case.*

OFNHP requests that this court sanction St. Charles using the court's inherent authority. "Federal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.  That authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process."  *America Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021) *quoting Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) *and other cases* (internal citations and quotations omitted).

Where possible, the court should consider using rules or statutes to address misconduct. *America Unites for Kids*, 985 F.3d at 1088.  "But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may rely on its inherent power."  *Id. quoting Chambers v. NASCO*, 501 U.S. 32, 50 (1991).  One rule and one statute suggest that a sanction and fee award are appropriate in this case, but do not directly apply due to the abridged nature of the proceedings.

The rule is FRCP 11.  Rule 11 requires an attorney "signing, filing, submitting or later advocating" for a pleading to certify that "the claims, defenses, and other legal contentions are warranted by existing law or a nonfrivolous argument for extending, modifying or reversing existing law."  FRCP 11(b) and 11(b)(2).  Here, St. Charles submitted and/or later advocated for several pleadings that violated the Rule 11 standard.  *See* Section III(B), *infra.*  However, OFNHP can only move for Rule 11 sanctions after giving St. Charles a 21-day safe harbor in which to withdraw its pleading, and the court had already ruled on St. Charles's pleading within five days of when it was first filed.  FRCP 11(c)(2); Docket No. 1, Tr. 3, 12-17.

The statute is Norris-LaGuardia.  Both Section 7 of the federal Norris-LaGuardia and the corresponding state statute provide for attorney fees.  29 U.S.C. § 107; ORS 662.090(2).

> No temporary restraining order or temporary injunction shall be issued except on condition that complainant shall first file an undertaking with adequate security in an amount to be fixed by the court sufficient to recompense those enjoined for any loss, expense, or damage caused by the improvident or erroneous issuance of such order or injunction, including all reasonable costs (*together with a reasonable attorney's fee*) and expense of *defense against the order* or against the granting of any injunctive relief sought in the same proceeding and subsequently denied by the court.

29 U.S.C. § 107 (emphasis added).

That Congress provided for fee awards shows its recognition that improper injunctive proceedings injure a union in and of themselves, on top of the harm caused by any resulting injunction.  However, the current law in the Ninth Circuit is that Section 7 does not by itself provide for recovery absent the filing of a bond.  *Benz v. Compania Naviera Hidalgo, S.A.*, 205 F.2d 944, 948 (9th Cir. 1953), *affirmed on other grounds Benz v. Compania Naviera Hidalgo, S.A.*, 353 U.S. 138 (1957).  OFNHP reserves its right to argue on appeal that *Benz* should be overruled, but believes it binding on this court.  St. Charles did not file a bond in this case.

Thus, OFNHP believes that the policies underlying Rule 11 and Norris-LaGuardia counsel in favor of a fee award in this case. However, OFNHP moves for sanctions pursuant to the court's inherent authority.

### 2. *St. Charles's voluntary dismissal does not preclude sanctions.*

St. Charles's voluntary dismissal of its complaint does not terminate this court's ability to issue sanctions. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-96 (1990); *Allen v. Exxon Corp. (In re Exxon Valdez)*, 102 F.3d 429, 431 (9th Cir. 1996). As explained by the Supreme Court in the Rule 11 context:

> It is well established that a federal court may consider collateral issues after an action is no longer pending. For example, district courts may award costs after an action is dismissed for want of jurisdiction. . . . Like the imposition of costs, attorney's fees, and contempt sanctions, the imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate. Such a determination may be made after the principal suit has been terminated.

*Cooter & Gell*, 496 U.S. at 395. A court "has jurisdiction to make orders necessary for the maintenance of orderly procedure" regardless of whether it has jurisdiction over the merits of an action. *In re Exxon Valdez*, 102 F.3d at 431.

OFNHP does not believe a specific deadline applies to its motion. *See* 496 U.S. at 398. However, OFNHP has followed the requirements of FRCP 54 and the corresponding Local Rules.

### 3. *Standard of review.*

A court using its inherent authority to sanction must first decide whether to issue compensatory sanctions, punitive sanctions, or both. *America Unites for Kids*, 985 F.3d at 1089.

Punitive sanctions aim to deter future misconduct and require criminal-type procedural protections. *Id.* OFNHP requests "compensatory or remedial measures" only, which do not require criminal-type procedures. *Id.*

Fees awarded as part of a compensatory sanction must be "calibrated to the damages caused by the bad-faith acts on which it is based." *Goodyear Tire & Rubber*, 137 S. Ct. at 1186. This requires application of a "but-for test" – those fees caused by the misconduct can be compensated, but "fees that would have been incurred without the misconduct" cannot. *Id.* at 1186-87. In the event that a plaintiff initiates a case in bad faith, the full cost of defending the case may meet the but-for test. *Id.* at 1187-88. As discussed further below, OFNHP requests fees for defending the TRO but not for submitting this Motion. *See* Section III(G)(2), *infra*; Highet Exs. 9-11.

When issuing sanctions pursuant to its inherent powers, a court "must make an explicit finding that the sanctioned party's conduct *constituted or was tantamount to* bad faith." *America Unites for Kids*, 985 F.3d at 1090 (internal citations and quotations omitted, emphasis added). Bad faith includes "conduct done vexatiously, wantonly, or for oppressive reasons." *Id.*

OFNHP does not request such a finding lightly. However, for the reasons below, it is warranted in this case.

### B. St. Charles misled the court.

There can be no dispute that only the Board may ask any court to enjoin an Unfair Labor Practice. The Supreme Court has held or confirmed on at least four occasions that the NLRA does not create a private right of action – only the Board can ask a court for relief of a ULP. *Burlington Northern Railway Co. v. Brotherhood of Maintenance of Way Employees*, 481 U.S. 429, 448 (1987)("*Burlington Northern*"); *Wisconsin Department of Industrial, Labor & Human*

*Relations v. Gould, Inc.*, 475 US 282, 286 (1986); *Garner v Teamsters Union*, 346 U.S. 485, 489-91 (1953); *Amalgamated Utility Workers v. Consolidated Edison Co.*, 309 U.S. 261, 261-62, 264-68 (1940); *see also* 29 U.S.C. § 160(j), OFNHP Opposition, p. 4 to 8.  The Ninth Circuit reconfirmed the principle firmly in 1997 and 2000.  *Burlington Northern & Santa Fe Railway v. International Brotherhood of Teamsters Local 174*, 203 F.3d 703, 708-09 (9th Cir. 2000) ("*BNSF*"); *San Antonia Community Hospital v. Southern California District Council of Carpenters*, 125 F.3d 1230, 1235 (9th Cir. 1997).

Even if the NLRA did not forbid St. Charles's request outright, there is no dispute that the Norris-LaGuardia Act and Oregon's nearly identical statute would control the request, and they would require the court to make a number of specific findings before granting it.  29 U.S.C. §§ 107, 108; ORS 662.080 *et seq.*; *BNSF*, 203 F.3d at 709.  Norris-LaGuardia requires "strict conformity" with its procedures.  29 U.S.C. § 101.

St. Charles misled the court about these binding authorities in a number of ways.

First, St. Charles filed an initial Motion for a TRO without so much as alluding to the Board's exclusive authority or the existence of the state or federal Norris La-Guardia acts.  *See, e.g.,* Docket No. 1-1, p. 13-15.  Indeed, although St. Charles had cited 10(j) in its request for injunctive relief of the Board, it avoided mentioning the statute in its opening brief.  *Compare id. with* Docket No. 1-1, p. 26 (ULP states "St. Charles seeks immediate 10j relief to prevent this strike until proper notice is given").

Second, St. Charles filed a "Supplemental Authority" in this court without mentioning either requirement.  Docket No. 2.

Third, in its Reply, St. Charles ignored and contradicted binding Supreme Court precedent even after OFNHP's brief pointed that precedent out to St. Charles.  With respect to

the Board's exclusive authority, St. Charles argued that a 1978 case, *Sears*, had limited preemption law in such a way that the Board's authority was no longer exclusive in this case. Reply, p. 11-13 *citing Sears, Roebuck & Co. v. San Diego County District Council of Carpenters*, 436 U.S. 180, 188 (1978).  Yet the Supreme Court twice reaffirmed the Board's exclusive authority after *Sears*.  *Burlington Northern,* 481 U.S. at 448 (1987); *Gould*, 475 U.S. at 286-87 (1986).

*Burlington Northern* and *Gould* are binding Supreme Court precedent holding precisely the opposite of what St. Charles argued.  *Burlington Northern*, 481 U.S. at 448; *Gould*, 475 U.S. at 286-87.  They were issued after the cases St. Charles claimed support its position.  *Compare id.* (dated 1986 and 1987) *with* Reply, p. 11-13 (relying on cases from 1970s).  OFNHP cited and explained the later cases in its Opposition.  Opposition, p. 5-6, 8 *citing Burlington Northern*, 481 U.S. at 448 *and Gould*, 475 U.S. at 286-87.  Yet St. Charles did not acknowledge either in its Reply.  Reply, p. 11-13.

Finally, St. Charles appeared at oral argument still unprepared to state why the court could issue a TRO at St. Charles's request.  Tr. 4-8.

### C. St. Charles was not making a good faith argument to change the law.

In communications between counsel, St. Charles has claimed it was seeking an "extension" of existing law.  FRCP 11 does permit counsel to make "nonfrivolous argument[s] for extending, modifying, or reversing existing law."  FRCP 11(b)(2).  However, that is not what St. Charles did.

St. Charles's first two briefs studiously ignored the very existence of Section 10(j), the exclusivity of the Board's role, and the Norris-LaGuardia Act.  Disclosing binding precedent and

arguing it should be changed is permitted by Rule 11; failing to disclose binding precedent is not. *Jorgenson v. County of Volusa*, 846 F.2d 1350, 1352 (11th Cir. 1988).

Even after OFNHP disclosed the controlling authorities to the court, St. Charles's third brief failed to engage honestly the question of the Board's exclusive authority. St. Charles effectively asked this court to extrapolate from *Sears* to the overruling of *Garner* and *Amalgamated Utility Workers* – something that only the Supreme Court could do. *Contrast* Reply, p. 11-13 *with Garner*, 346 U.S. at 489-91; *Amalgamated Utility Workers*, 309 U.S. at 261-62, 264-68. However, St. Charles did not acknowledge this was what it was asking, and did not acknowledge *Garner* and *Amalgamated Utility Workers* held the Board's authority was exclusive.[2]

Worse, St. Charles utterly ignored the fact that, after *Sears*, the Supreme Court twice reconfirmed its earlier holdings. *Burlington Northern,* 481 U.S. at 448 (1987); *Gould*, 475 U.S. at 286-87 (1986). St. Charles did not acknowledge these controlling cases. Reply, p. 11-13. Indeed, St. Charles has yet to acknowledge to this court that controlling precedent holds only the Board may seek injunctive relief of a ULP. *See, e.g.,* Reply, p. 11-13; Tr. 4-8.

### D.     St. Charles knew it was misleading the court.

St. Charles has not argued to OFNHP that it was unaware of the exclusivity of the Board's authority or the existence of Norris-LaGuardia. However, some of the court's

---

[2] St. Charles's only statement about these cases was that they "did not involve matters of public safety and welfare." Reply, p. 13 FN 8. Yet St. Charles's claim in this case was not based on a breach of "public safety and welfare" or any other state law. It was based solely on an Unfair Labor Practice theory, which is precisely what the Supreme Court held only the Board can pursue. *Compare* Docket No. 1-1, p. 4 (asserting only breach of NLRA) *with Garner*, 346 U.S. at 489-91 (only Board may enforce ULP); *Amalgamated Utility Workers*, 309 U.S. at 261-62, 264-68 (same). To hold that a private party could seek injunctive relief for a ULP would require overturning *Garner* and *Amalgamated Utility Workers*, among other cases.

statements during oral argument suggest the court might be concerned that this is the case.  Tr. 4.  There are several reasons the court can rest assured that St. Charles's was aware of the binding authorities it failed to disclose.

 First, St. Charles is represented by extremely experienced and competent counsel.  Its lead counsel is Mark A. Hutcheson of Davis Wright Tremaine.  Hutcheson's biography suggests he has been practicing for over 50 years – he graduated Order of the Coif from the University of Washington Law School in 1967.  Highet Ex. 3, p. 4.  Hutcheson has been named among "The Nation's 100 Most Powerful Employment Attorneys", "'Best Lawyers in America' in Labor and Employment Law", "'America's Leading Lawyers for Business' in Labor and Employment (Washington)" and "Senior Statemen."  *Id.* at p. 5.  He has extensive experience with collective bargaining law.  *Id.* p. 2-3.

There is simply no way that one of the nation's top labor lawyers is unaware of the Norris-LaGuardia Act or the Board's exclusive authority in ULP cases.

In addition, this is the second time in the past year that Davis Wright Tremaine has sought injunctive relief for an allegedly faulty strike notice.  Highet Ex. 4; Highet Ex. 5, p. 4, 6-7, 14-15; *Providence Health & Services – Washington v. Teamsters Local 959*, 3:20-cv-0067-SLG (D. Alaska 2020).  In *Providence*, a hospital represented by Davis Wright Tremaine sought a TRO arguing that a health care strike during COVID threatened the public health and that the defendant union had failed to provide an exact start time on its 8(g) notice.[3]  *Id.*

The fact that Davis Wright Tremaine has used this tactic before supports the inference that the firm's failure to disclose binding authority was part of an intentional abuse of the courts

---

[3] The plaintiff employer voluntarily dismissed its complaint the same day that it was filed, prior to any ruling.  Highet Ex. 5.

to interfere with a employees' union activity rather than an unintentional omission due to a lack of time.[4]

A third reason the court can infer St. Charles intentionally mislead the court is its reaction when OFNHP drew the relevant authority to its attention. St. Charles did not withdraw its request for injunctive relief. It did not acknowledge this court was bound by existing Supreme Court precedent such as *Burlington Northern* and *Gould*, or set out an argument as to why the Supreme Court should reverse those cases. Instead, St. Charles asserted to this court that the court had authority to do what the Supreme Court and Congress have clearly forbidden. St. Charles doubled down rather than changing course.

### E.   St. Charles's request for a TRO heightened its duty of candor.

Attorneys are always officers of the court and always have a duty of candor. However, this duty is at its "apex" in TRO proceedings, because opposing counsel may have limited or no ability to respond. *ST Shipping & Transportation, Inc. v. Golden Fleece Maritime, Inc.*, 2008 U.S. Dist. Lexis 68799 (S.D.N.Y. 2008)("apex" in *ex parte* proceedings); *Jorgenson*, 846 F.2d at 1352 (TRO proceedings); *see also Maine Audubon Society v. Purslow*, 907 F.2d 265, 268-69 (1st Cir. 1990).

For example, in *Jorgenson* the Eleventh Circuit held:

The appellants had a duty to refrain from affirmatively misleading the court as to the state of the law. They were not relieved of this duty by the possibility that opposing counsel might find and cite the controlling precedent, *particularly where, as here, a temporary restraining order might have been issued ex parte*.

---

[4] OFNHP does *not* ask this court to design a sanction to deter Davis Wright Tremaine from using the TRO tactic again. When the court uses its inherent authority to sanction, it must either limit itself to compensatory remedies or follow heightened procedural requirements. *See* Section III(A)(3), *supra*. OFNHP submits Davis Wright Tremaine's past behavior only as evidence of its intent in this case.

*Jorgenson*, 846 F.2d at 1352 (emphasis added).

The First Circuit has also explained the concern well:

> Attorneys are officers of the court and judges must rely on them in a number of ways. In the usual circumstance, the presence of opposing counsel creates a built-in system of checks and balances which aids the judge in defining problem areas. Where counsel appears *ex parte*, however, the customary checks and balances do not pertain – and the court is entitled to expect an even greater degree of thoroughness and candor from unopposed counsel than in the typical adversarial setting.

*Maine Audubon Society*, 907 F.2d at 268.

St. Charles, like the plaintiff in *Jorgenson*, misled the court in an application for a TRO that might have been heard in an *ex parte* context. Moreover, after counsel entered an appearance for OFNHP, St. Charles asked the court to schedule a hearing within hours, before OFNHP could file a response. Highet Ex. 1, p. 2-3. By asking the court to act without input from opposing counsel, St. Charles assumed a heightened duty to disclose the controlling authority opposing counsel had not yet been able to brief.

  **F.** **St. Charles asked this court to defy a remedial statute.**

The need for sanctions is also heightened in this case because St. Charles withheld not only controlling precedent but a direct command of Congress intended to end a history of judicial abuse.

As OFNHP previously explained, Norris-LaGuardia and the NLRA sought to end an era of "government by injunction" when employers could disrupt and stifle union activity using injunctions and restraining orders. *BNSF*, 203 F.3d at 707 (internal quotations and citations omitted); Response to TRO, Docket No. 12, p. 4-6. Congress focused on procedural reforms and strict limits on judicial authority because it found what it described "unequivocally as abuses of judicial power." *BNSF*, 203 F.3d at 709 (internal citations and quotations omitted); *see also*

*Garner*, 346 U.S. at 490; *Amalgamated Utility Workers*, 309 U.S. at 265; *BNSF*, 203 F.3d at 707-09.  Congress found the courts "purposefully misconstrued" and eviscerated the laws they passed to protect unions.  *Burlington*, 481 U.S. at 438-39 *quoting* 75 Cong. Rec. 5478 (1932).

> Gentlemen, there is one reason why this legislation is before Congress, and that one reason is disobedience of the law on the part of whom?  On the part of organized labor?  No.  Disobedience of the law on the part of a few Federal judges.  If the courts had been satisfied to construe the law as enacted by Congress, there would not be any need of legislation of this kind.

*Id*.

Thus, St. Charles sought to induce this court to engage in conduct Congress had found to be lawless; to return to a time when unelected judges abrogated the will of a co-equal branch of government.  That is an oppressive and improper purpose.  *See America Unites for Kids*, 985 F.3d at 1090.

### G. OFNHP requests reasonable fees.

#### 1. OFNHP requests Economic Survey rates.

As discussed above, courts may award reasonable fees as compensation for harm actually caused by sanctioned misconduct.  *See* Section III(A)(3), *supra.*  OFNHP requests fees and costs for defending against St. Charles's motion, but not for submitting this motion.  It asks that the court use market survey rates and provides detailed accounting of time and costs.  The resulting total is $16,951.58 in fees and costs, combined.

OFNHP requests hourly rates of $349 for attorneys Catherine Highet and Sam Lieberman, and $159 for paralegal Chris Knudtsen.

The District of Oregon instructs parties to begin any fee petition using the Oregon State Bar's Economic Survey.  LR 54-3(a); *Message from the Court Regarding Fee Petitions*.[5]  OFNHP believes lodestar factors would be appropriate in this case.  For example, as will be obvious from the time records, lead counsel for OFNHP had to drop all work and personal matters to respond to St. Charles's Motion.  Highet Ex. 9.  OFNHP reserves the right to argue lodestar factors further should St. Charles argue for a deviation from the Economic Survey.  However, as its initial request, OFNHP simply asks for Economic Survey rates.

Lead counsel for OFNHP, Catherine Highet, has been admitted to practice for 17 years and practices in Portland, Oregon, where OFNHP is based.  Highet Decl. ¶ 9; Ex. 6.  According to the Economic Survey, the median rate for Portland attorneys with 16-20 years' experience was $325 per hour in 2017.  *Oregon State Bar 2017 Economic Survey*, p. 39.[6]  According to the U.S. Bureau of Labor Statistics, that is equivalent to $349.20 today.[7]

Attorney Sam Lieberman also assisted with OFNHP's defense.  He is a Senior Associate Director in the Legal Department of the American Federation of Teachers, with which OFNHP is affiliated.  Highet Ex. 7.  Lieberman is based in the District of Columbia.  *Id.*  The cost of living is significantly higher in Washington, D.C. than in Portland, Oregon,[8] but since the Economic

---

[5] Available at https://www.ord.uscourts.gov/index.php/rules-orders-and-notices/notices/fee-petitions.

[6] Available at https://www.osbar.org/surveys_research/snrtoc.html#economicsurveys.

[7] *See CPI Inflation Calculator*, https://www.bls.gov/data/inflation_calculator.htm. Dates used were July 2017 (the halfway point of the year) and February 2021.

[8] For example, compare the Office of Personnel Management's cost of living adjustments for the two areas:

Portland: https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/salary-tables/21Tables/html/POR.aspx

District of Columbia: https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/salary-tables/21Tables/html/DCB.aspx

Survey does not include data for Washington, D.C., OFNHP will use Portland rates. This results in the same hourly rate for Lieberman as for Highet, $349.

Paralegal Chris Knudtsen also performed substantial research and drafting work for OFNHP's opposition. Knudtsen has a Paralegal Certification and eight years of experience. Highet Ex. 8. His experience includes substantial labor law research and litigation work, as can be seen by the research and drafting he performed in this case. Highet Decl. ¶ 11; Highet Ex. 11.

The Economic Survey does not include paralegals, but this court has used the National Legal Assistant Association's Market Survey as a benchmark. *OmniGen Research LLC v. Yongqiang Wang*, 2017 U.S. Dist. 189543 (D. Or. 2017), ¶¶ 320-23. The mean billing rate for the relevant region was $146 in 2016, which is equivalent to $159.58 in 2021.[9]  *Id.*

2.    OFNHP submits detailed, reasonable time records.

The following chart summarizes the costs and fees OFNHP is requesting:

|  | **Hourly Rate** | **Actual Hours / Costs** | **Hours / Costs Requested** | **Total Requested** |
|---|---|---|---|---|
| Highet | $ 349 | 35.9 | 32.4 | $ 11,307.60 |
| Lieberman | $ 349 | 10.2 | 8.2 | $ 2,861.80 |
| Knudtsen | $ 159 | 14.1 | 12.4 | $ 1,972.13 |
| Total Hours |  | 60.2 | 53.0 |  |
|  |  |  |  |  |
| Costs |  | $ 810.05 | $ 810.05 | $ 810.05 |
|  |  |  |  |  |
| **Total Requested** |  |  |  | **$ 16,951.58** |

Highet Ex. 13.

---

[9] In *OmniGen* this court reduced certain paralegals' rates to $125 per hour, because they failed to provide their training and experience. OFNHP has submitted Knudtsen's training and experience. Inflation calculated at BLS CPI Inflation Calculator, *supra*, from July 2016 to February 2021.

Detailed documentation of the hours spent and requested is attached as Exhibits 9 through 11 of the Highet Declaration. Time for Highet and Knudtsen was tracked contemporaneously using an electronic timer. Lieberman does not track his time contemporaneously, as he is salaried. Therefore, OFNHP submits only that portion of his time Lieberman could verify through written records such as Westlaw search histories.

OFNHP has reduced some times to ensure that what it requests of the court is highly reasonable. The reductions are noted in the exhibits. The time for which compensation is requested is 88% of that actually worked. As noted above, OFNHP has not asked for time preparing the instant motion.

Documentation of OFNHP's costs is attached as Exhibit 12 of the Highet Declaration.

## CONCLUSION

For all the foregoing reasons, OFNHP respectfully request that this court find that St. Charles acted in bad faith by asking the court to issue an injunction Congress had forbidden it to issue without disclosing the controlling law. OFNHP requests $16,951.58 in attorney fees and costs as a compensatory sanction pursuant to the court's inherent authority.

Respectfully submitted,

Dated: March 23, 2021                HIGHET LAW LLC

                          By:    s/ Catherine A. Highet
                                 Catherine A. Highet (OSB No. 071306)
                                 *Attorney for Defendant*