IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ST. CHARLES HEALTH SYSTEM, INC.
an Oregon nonprofit corporation,

       Plaintiff,

   v.

OREGON FEDERATION OF NURSES
AND HEALTH PROFESSIONALS,
LOCAL 5017, AFT, AFL-CIO,

       Defendant.
_____

Case No. 6:21-cr-304-MC

ORDER

**MCSHANE, Judge**:

    On February 25, 2021, attorneys for St. Charles Health System (the hospital) filed an action in state court attempting to enjoin certain hospital employees from striking. The hospital's lone claim alleged that the union violated the National Labor Relations Act. The following day, a Friday, the union removed the action to this Court. Within hours, the hospital moved for a temporary restraining order preventing the union from striking the following Wednesday. At the same time, the hospital sought expedited consideration of the motion through counsel; emailing the Court with a request for a hearing on the motion that very day. ECF No. 21-1, 3. At the time of this request, the only briefing the court had on the matter was the hospital's emergency motion for a restraining order.

    Absent from the hospital's emergency motion was any mention of the fact that Section 10(j) of the National Labor Relations Act provides that only the National Labor Relations Board

1 – OPINION AND ORDER

may seek an injunction to prevent an unfair labor practice under the National Labor Relations Act.[1] In fact, although the hospital raised Section 10(j) at an earlier motion (at the administrative level) asking the National Labor Relations Board to enjoin the strike, it made no mention of Section 10(j) in its motion for emergency relief before this Court. Noting this unusual if not glaring omission at oral argument, the Court expressed its concern that counsel failed to alert the court to clear and contrary authority regarding the court's authority to issue the requested injunction. The Court then denied the motion for injunctive relief as stated on the record. The hospital dismissed the case the following day.

The union then moved for sanctions against the hospital, arguing its filings were made in bad faith and were intended to confuse the Court. The union argues:

> St. Charles has not argued to OFNHP that it was unaware of the exclusivity of the Board's authority or the existence of Norris-LaGuardia. However, some of the court's statements during oral argument suggest the court might be concerned that this is the case. There are several reasons the court can rest assured that St. Charles was aware of the binding authorities it failed to disclose.
>
> First, St. Charles is represented by extremely experienced and competent counsel. Its lead counsel is Mark A. Hutcheson of Davis Wright Tremaine. Hutcheson's biography suggests he has been practicing for over 50 years—he graduated Order of the Coif from the University of Washington Law School in 1967. Hutcheson has been named among "The Nation's 100 Most Powerful Employment Attorneys", "'Best Lawyers in America' in Labor and Employment Law", "'America's Leading Lawyers for Business' in Labor and Employment (Washington)" and "Senior Statemen." He has extensive experience with collective bargaining law.
>
> There is simply no way that one of the nation's top labor lawyers is unaware of the Norris-LaGuardia Act or the Board's exclusive authority in ULP cases.
>
> In addition, this is the second time in the past year that Davis Wright Tremaine has sought injunctive relief for an allegedly faulty strike notice. [There], a hospital represented by Davis Wright Tremaine sought a TRO arguing that a health care

---

[1] As discussed at oral argument, in some situations not present here (involving preemption issues or motions advanced by a state attorney general), courts may grant injunctive relief even when such relief is not sought by the National Labor Relations Board.

2 – OPINION AND ORDER

> strike during COVID threatened the public health and that the defendant union had failed to provide an exact start time on its 8(g) notice.
>
> The fact that Davis Wright Tremaine has used this tactic before supports the inference that the firm's failure to disclose binding authority was part of an intentional abuse of the courts to interfere with a employees' union activity rather than an unintentional omission due to a lack of time.
>
> A third reason the court can infer St. Charles intentionally mislead the court is its reaction when OFNHP drew the relevant authority to its attention. St. Charles did not withdraw its request for injunctive relief. It did not acknowledge this court was bound by existing Supreme Court precedent such as *Burlington Northern* and *Gould*, or set out an argument as to why the Supreme Court should reverse those cases. Instead, St. Charles asserted to this court that the court had authority to do what the Supreme Court and Congress have clearly forbidden. St. Charles doubled down rather than changing course.

Defendant's Motion for Sanctions, 12-14; ECF 20 (citations and footnote omitted).

Especially given Mark Hutcheson's experience with labor law and, more specifically, with collective bargaining, the failure to alert the Court that the hospital sought an "extension" of binding law is concerning.

The American Bar Association publishes the Model Rules of Professional Conduct. "Rule 3.3(a)(3) prohibits an attorney from knowingly failing to disclose controlling authority directly adverse to the position advocated. The rule is an important one, especially in the district courts, where its faithful observance by attorneys assures that judges are not the victims of lawyers hiding the legal ball." *Transamerica Leasing, Inc. v. Compania Anonima Venezolana de Navegacion*, 93 F.3d 675 (9th Cir. 1996); *see also Southern Pacific Transp. Co. v. Public Utilities Com'n of State of Cal.*, 716 F.2d 1285, 1291 (9th Cir. 1983) (noting the apparent "dereliction of duty to the court" when counsel failed to mention adverse, controlling authority to the court in violation of the Code of Professional Responsibility). It was clear at oral argument that Mr. Hutcheson was unfamiliar with the brief that had been filed, he was unfamiliar with the facts of the cases cited in his brief, and he was unable to cite to any cases to support the argument that the court had the authority to

grant the relief he was requesting. After throwing an associate under the bus heading to Blameville, it became increasingly clear that the motion was filed in bad faith.

The court does realize that emergency motions such as this, where time is of the essence, often results in briefings that are less than perfect. But it is precisely because of this that it is particularly important to disclose basic precedent to the court so that an informed decision can be made quickly. Had the defense not cobbled together a quick brief, the court was prepared to issue a completely illegal order based on the law as presented by the hospital; law the court later learned to be a fiction.

Mark Hutcheson is granted 14 days to show cause why he should not be sanctioned for violating his ethical obligation to alert the Court to contrary authority.

Additionally, Mark Hutcheson shall show cause why the Court should not sanction him under 28 U.S.C. § 1927. That statute provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The fact that the hospital cited Section 10(j) in its motion asking the National Labor Relations Board to enjoin the strike yet omitted any mention of the section in its motion for emergency injunctive relief, provides at least an argument that both the motion and the complaint itself were filed in bad faith. There is at least the appearance that the goal of this action was not to advance a valid legal argument or claim, but rather to gain a valuable negotiating chip (in the form of an injunction prohibiting a rapidly approaching strike) during longstanding discussions with the union. Again, it is inconceivable to the Court that an attorney experienced in this specific area of the law would be unaware of binding Supreme Court authority specifically holding courts lacked

jurisdiction to do what the hospital requested here. If such actions were in fact made in bad faith, they are sanctionable. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1108 (9th Cir. 2002).

The Court does not issue this show cause order lightly. But on this record, the order is justified. The Court will defer referring this matter to the Washington State Bar until it reviews Mark Hutchenson's response, the union's optional reply, and, if necessary, presides over an in-person oral argument.

IT IS SO ORDERED.

DATED this 7th day of April, 2021.

**/s Michael McShane**
Michael J. McShane
United States District Judge