Allison Martin Rhodes, OSB No. 000817
AMartinRhodes@sheppardmullin.com
Sheppard Mullin Richter & Hampton
Four Embarcadero Ctr., Ste. 1700
San Francisco, CA 94111
Tel.: 415-403-6228, Ext. 12921

Paul Werner, admitted *pro hac vice*
pwerner@sheppardmullin.com
Hannah Wigger, admitted *pro hac vice*
hwigger@sheppardmullin.com
Sheppard Mullin Richter & Hampton
2099 Pennsylvania Ave. NW, Ste. 100
Washington, DC 20006
Tel: 202-747-1900

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ST. CHARLES HEALTH SYSTEM, INC., an Oregon nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>OREGON FEDERATION OF NURSES AND HEALTH PROFESSIONALS, LOCAL 5017, AFT, AFL-CIO<br><br>Defendant. | Case No. 6:21-cv-00304-MC<br><br>**ST. CHARLES' OPPOSITION TO MOTION FOR SANCTIONS**<br><br>Oral Argument Requested |

 Plaintiff St. Charles Health System, Inc. ("St. Charles"), hereby opposes Defendant Oregon Federation Of Nurses And Health Professionals, Local 5017, AFT, AFL-CIO's ("OFNHP's"), motion for sanctions ("Motion").

**INTRODUCTION**

OFNHP's motion is its latest bid to obtain leverage over St. Charles in their ongoing first-time contract negotiations and the parties' relationship more generally. This entire litigation arose in the first place because, while the parties were engaging with a mediator to schedule further contract negotiations, OFNHP announced it would strike for an *indefinite* period of time, without sufficient notice, knowing it would imperil St. Charles' ability to provide vital care amid an unprecedented global pandemic that continues to rage on in Oregon. In response, St. Charles filed an unfair labor practice ("ULP") charge with the National Labor Relations Board ("NLRB"), which is meritorious and remains pending. But when the agency made clear that, due to its caseload and backlog from the COVID-19 pandemic, it would be unable to step in and stop OFNHP's unlawful strike before it wreaked havoc on St. Charles' operations and ability to care for its patients, St. Charles, through counsel, requested equitable relief from this Court. St. Charles sought a standstill order to ensure the NLRB could exercise its jurisdiction as to the merits of the ULP to help stave off a public health crisis.

Now, after St. Charles voluntarily dismissed the litigation upon denial of its requested relief and after the parties successfully negotiated a return to work agreement, OFNHP moves for "sanctions" as additional leverage. But OFNHP's request for this Court to find St. Charles acted in bad faith and award attorneys' fees should be denied for multiple reasons. As an initial matter, while OFNHP asks the Court to sanction St. Charles under its inherent authority, OFNHP exclusively targets conduct by St. Charles' *counsel*, not St. Charles or any of its personnel. OFNHP indeed offers zero evidence or any argument – because there is none – that St. Charles did anything other than engage expert counsel in good faith to advise and represent it in connection with this complicated and urgent matter. Whatever fault, if any, may be found with the quality of

St. Charles' representation, that fault cannot properly be imputed to St. Charles, let alone support a finding of bad faith by St. Charles warranting sanctions against it.

Moreover, as explained in greater detail by St. Charles' counsel in its brief, Davis Wright Tremaine ("DWT") made a colorable, equitable argument for an injunction. When the NLRB stated it could not complete its investigation prior to the strike due to scheduling constraints, St. Charles faced a situation in which the community could suffer great harm exacerbated by a once-in-a-lifetime pandemic, and St. Charles had no other legal recourse but to seek equitable relief so as to allow the NLRB more time to decide the merits of the issue. Sanctions here would do nothing more than add improper leverage to labor negotiations and deter parties like St. Charles from seeking judicial relief in the future. The Court should deny the motion.

## BACKGROUND

In evaluating the OFNHP's motion, the Court needs to appreciate the context in which the underlying suit and request for relief was filed. At that time, St. Charles faced a serious public health crisis and lacked any other remedy to prevent the health system, and its patients, from suffering irreparable harm. When OFNHP sprung its indefinite strike notice on St. Charles just one day after the parties set dates for mediation and contract negotiations, St. Charles immediately filed a ULP charge with the NLRB. TRO Motion at 5. But the NLRB advised St. Charles that, due to scheduling constraints, it would not resolve the charge prior to the March 4, 2021, strike date. Declaration of Rebecca Berry ("Berry Decl."), Dkt. 11, ¶¶ 6-7. And on February 25, 2021, the Oregon Board of Medical Imaging informed St. Charles it would not be able to certify out-of-state replacement workers by the time of the strike. TRO Motion at 6; Berry Decl. ¶¶ 9-11.

This left St. Charles in an untenable position – as OFNHP no doubt intended. St. Charles is the region's primary trauma center and was already operating at or near capacity serving patients

whose conditions have been exacerbated by delayed care. TRO Motion at 2-3; Berry Decl. ¶ 8. It had a backlog of patients waiting for surgical care with St. Charles being the only option for such patients east of the Cascade Mountains (covering a territory the size of South Carolina). TRO Motion at 2-3; Berry Decl. at ¶ 8. St. Charles could not simply transfer its patients to another local hospital because there is no other hospital system in the region. Thus, the strike would place additional stress on the rest of its caregivers who were already overworked due to the conditions created by the pandemic. Second Declaration of Rebecca Berry ("Berry Second Decl."), Exhibit 1, ¶ 4.

In an effort to understand its options until the NLRB made its determination, St. Charles retained DWT and its experienced labor counsel, Mark Hutcheson, to provide guidance. In turn, St. Charles filed a complaint for a violation of the National Labor Relations Act and injunctive relief, as well as a motion for a temporary restraining order, in Circuit Court for the State of Oregon, County of Deschutes. Dkt. 1. St. Charles asked the Circuit Court to enjoin OFNHP from going on strike on March 4, 2021. *Id.* In response, OFNHP removed the case to federal court on February 26, 2021. Dkt. 1. On March 1, 2021, OFNHP filed a response in opposition to St. Charles' motion for temporary restraining order. Dkt. 12. Six hours later, St. Charles filed a reply in support of its motion. Dkt. 14; *see* Motion for Sanctions ("Mot.") at 5.

The Court heard oral argument on March 2, 2021. Dkt. 16. At oral argument, Mr. Hutcheson explained that St. Charles "ha[d] been advised by [NLRB] Region 19. . . they don't have the time and resources yet to give us even a preliminary ruling for Thursday, when the strike is scheduled to start." Tr. at 6:7-11. He further reiterated the "unusual times" that formed the backdrop of St. Charles' motion. Tr. at 11:24-12:5. Recognizing the harm a strike could cause, the Court "implor[ed]" the parties to "talk today about whether there is any capacity on your own,

without court intervention, clearly without the Board's intervention at this stage, to postpone the strike for a short period of time in order to get both of you to the table." Tr. at 16:10-14. Following the hearing, St. Charles withdrew its motion. Dkt. 18.

OFNHP did move forward with its strike – this strike taxed St. Charles' staff at a time when it was attempting both to treat its patients and run an extensive vaccine clinic for the county that, at its height, vaccinated thousands of patients a day in order to combat the spread of COVID-19. Berry Second Decl. ¶ 5. Further, as a result of OFNHP's strike, St. Charles was forced to contemplate canceling or postponing certain elective and complicated surgeries that patients had scheduled months before – all at a time in which St. Charles was facing a backlog of thousands of procedures due to the COVID-19 pandemic. Berry Second Decl. ¶ 5. In the end, the strike cost St. Charles millions of dollars in replacement labor, and resulted in patients raising concerns related to the conduct and disturbances of those on the picket line. Berry Second Decl. ¶ 5.[1]

Nevertheless, after St. Charles endured significant damages, the parties finally resolved the strike. Yet while the parties continue to negotiate other disputes, OFNHP has filed a motion for sanctions against St. Charles requesting $16,951.58 in attorneys' fees.[2] Mot. at 18. In its motion, OFNHP argues St. Charles misled the Court regarding the Court's authority to issue a temporary restraining order in this case. *Id.* at 2.[3]

---

[1] St. Charles entered into a return to work agreement which affirmed that all strikers would return to work without discipline. Berry Second Decl. ¶ 6.

[2] OFNHP seeks compensatory, not punitive sanctions. Mot. at 9; *see Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (explaining for punitive sanctions, "a court would need to provide procedural guarantees applicable in criminal cases, such as a 'beyond a reasonable doubt' standard of proof").

[3] The Court also ordered Mark Hutcheson, to "show cause why he should not be sanctioned for violating his ethical obligation to alert the Court to contrary authority" and under 28 U.S.C. § 1927. Dkt. 24. St. Charles does not address that order, because it was not directed to St. Charles and invokes authority that does not apply to parties.

## STANDARD

Recognizing there is no other basis on which the Court could sanction St. Charles, OFNHP asks the Court to invoke its "inherent authority" to do so.[4] But "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *America Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021). Accordingly, before sanctioning a litigant in exercise of its inherent authority, the Court must explicitly find either a willful violation of a court order or that the litigant "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," based on "proof of bad intent or improper purpose." *Id.* at 1090; *U.S. v. Brown*, 62 Fed. App'x 165, 166 (9th Cir. 2003); *In re Keegan Mgmt. Co., Securities Litig.*, 78 F.3d 431, 436 (9th Cir. 1996). Bad faith in this context means the litigant "knowingly or recklessly raise[d] a frivolous argument, or argue[d] a meritorious claim for the purpose of harassing an opponent." *Keegan*, 78 F.3d at 436; *Primus Automotive Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648-49 (9th Cir. 1997). Here, there is no evidence whatsoever that St. Charles did anything other than rely on expert and experienced labor counsel to advise and represent it in connection with a crisis. As such, there is no basis for imposing any sanctions on St. Charles.

---

[4] OFNHP is correct that Rule 11 has no applicability here, as it moves against St. Charles, not its counsel, and has otherwise failed to comply with the requirements of the Rule. *See* Fed. R. Civ. P. 11. It is also correct that the Norris-LaGuardia Act has no applicability here, as the Court did not enter any preliminary relief. *See* 29 U.S.C. § 107; *Benz v. Compania Naviera Hidalgo, S.A.*, 205 F.2d 944, 948 (9th Cir. 1953).

## ARGUMENT

**I.    OFNHP Has Presented No Evidence Or Argument That St. Charles Engaged In Any Bad Faith Conduct And There Is None.**

While OFNHP purports to bring its motion against, and seek sanctions from, St. Charles, it does not identify any conduct *by St. Charles* remotely warranting sanctions.[5] Instead, OFNHP attacks St. Charles' counsel's brief citations, oral presentation, experience, and duty of candor. Mot. at 10-11 & 13-14. OFNHP absurdly argues that St. Charles' alleged ill "intent" can be inferred from its hiring of DWT whose other lawyers apparently represented a different client, in a different court, in a different matter where the firm also sought injunctive relief for that client. Mot. at 13-14 & n.4.[6]

But such attacks are misplaced because, when evaluating sanctions motions, courts differentiate between each person or entity before them. *See, e.g.*, *Primus*, 115 F.3d at 648-50 (reminding the district court that sanctions imposed on a person "should be based solely on his own improper conduct without considering the conduct of the parties or any other attorney") (internal quotations omitted); *In re Porto*, 645 F.3d 1294, 1304 (11th Cir. 2011) (finding "[w]hile a client may be made to suffer litigation losses because of her attorney's missteps, [we] reject[] the notion that an innocent client must also suffer sanctions because of misconduct by her attorney that is not fairly attributable to her… and a court must specify conduct of the plaintiff herself that is bad enough to subject her to sanctions…" and that "sanctionable conduct by a party's counsel does not necessarily parlay into sanctionable conduct by a party"); *M.E.N. Co. v. Control Fluidics,*

---

[5] OFNHP has also failed to cite to any case law that would support a finding of sanctions against St. Charles.

[6] The court never ruled on the request in that case either. *Providence Health & Services – Washington v. Teamsters Local 959*, Case No. 3:20-cv-0067 (D. Alaska 2020). It was filed by different lawyers for a different client in a different court on a different set of facts. *Providence Health & Services*, Case No. 3:20-cv-0067, Dkt. 1 & 8.

*Inc.*, 834 F.2d 869, 873 (10th Cir. 1987) (noting "[i]f the fault lies with the attorneys, that is where the impact of the sanction should be lodged") (internal quotations omitted); *In re Ruben*, 825 F.2d 977, 986 (6th Cir. 1987) ("[i]f there was any fault in this regard, it lay with the attorneys and [plaintiff] should not be penalized for their misdeeds, if any") (internal quotations omitted).

Further, and equally as important, there is simply no evidence that St. Charles directed its counsel to file the underlying action for any improper purpose. *Keegan*, 78 F.3d at 436. The record is clear that St. Charles filed the motion for a temporary restraining order to address the very real harms, exacerbated by the COVID-19 pandemic, that the hospital was facing if OFNHP went on strike. Berry Second Decl. ¶¶ 2-5. And indeed, St. Charles was harmed by OFNHP's strike: in addition to the millions of dollars in labor costs it incurred, it was forced to find staffing, and train staff, for high-risk emergency surgeries as well as elective procedures that had been long-scheduled due to a nearly insurmountable backlog caused by the COVID-19 pandemic. Berry Second Decl. ¶ 5.

St. Charles took every reasonable step it could to ensure its filings were proper. St. Charles, as OFNHP notes, hired DWT, a nationally recognized firm, and was represented by two experienced labor and employment lawyers who guided St. Charles throughout the process. Mot. at 13 & Highet Ex. 3. St. Charles relied on the expertise of the experts it hired; St. Charles did not "knowingly or recklessly raise[ ] a frivolous argument." *Keegan*, 78 F.3d at 436. And, thus, sanctions against St. Charles are not warranted.

## II.    The Motion For A Temporary Restraining Order Does Not Merit Sanctions.

Further, as DWT's counsel explains in its brief, St. Charles had a good faith basis for its lawsuit. The Ninth Circuit has recognized sanctions not only may have a "severe effect" on the sanctioned party, but also may "deter future parties from pursuing colorable claims." *Primus*, 115

F.3d at 650.  As a result, "sanctions should be reserved for the *rare and exceptional case* where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose."  *Primus*, 115 F.3d at 649 (emphasis added, internal quotations omitted); *see Keegan*, 78 F.3d at 436 ("[f]or sanctions to apply, if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass.").  The *Primus* Court further noted that while a court may find an argument ultimately "lack[s] merit. . . forceful and effective representation often will call for innovative arguments."  *Primus*, 115 F.3d at 649.  In other words, there is a difference between arguments the court finds meritless, and filings that are frivolous and improper.

Here, St. Charles' counsel made an equitable argument that the unique circumstances caused by the COVID-19 pandemic justified the Court asserting jurisdiction over its motion for a temporary restraining order to maintain the *status quo* during a very harrowing time until the NLRB could act.  *See, e.g.*, Berry Decl. at ¶¶ 8-11 (explaining the harm St. Charles faced if OFNHP went on strike); TRO Motion at 2-3 (same); Tr. at 11:24-12:5 (reiterating the "unusual times" that formed the backdrop of St. Charles' motion); Reply In Support Of TRO at 13, n.8 (raising the "public safety and welfare").  When St. Charles filed its motion, the NLRB had already stated it would not resolve St. Charles' charge, either by issuing a formal complaint or dismissing it, prior to the March 4, 2021, strike date.  As a result, the NLRB's power to decide whether or not to seek an injunction was arguably not triggered.  29 U.S.C. § 160(j) ("[t]he Board shall have power, *upon issuance of a complaint*. . . to petition any United States district court. . . for appropriate temporary relief or restraining order").  Given the severity of the harm St. Charles faced, St. Charles chose to appeal to the Court for assistance.

Indeed, St. Charles' filing was not frivolous as Courts have granted equitable relief in other labor cases implicating strikes, including cases in which a party had no other recourse or the public's health and safety were at risk. *See, e.g.*, *State ex rel. Tidewater Shaver Barge Lines v. Dobson*, 195 Or. 533, 577 (1952) (holding "when the National Labor Relations Board is impotent by its own confession to implement immediate aid, then we believe it is appropriate and necessary that our courts of equity take jurisdiction and apply such remedies as a hearing on the facts seems to dictate"); *State v. Local 115 Joint Bd., Nursing Home and Hospital Emp. Division*, 56 A.D.2d 310, 311 (N.Y. Sup. Ct. 2d. Dep't, 1977) (holding "state courts are not pre-empted from granting equitable relief to prevent the strike, since a demonstrable hazard to a significant number of the community existed"); *City Line Open Hearth, Inc. v. Hotel, Motel and Club Emp. Union Local No. 568, AFL-CIO*, 413 Pa. 420, 432 (Pa. 1964) (noting, in the context of evaluating an injunction restraining picketing, "[t]he power and duty of the State to take adequate steps to preserve the peace and to protect the privacy, the lives, and the property of its residents cannot be doubted").

Moreover, St. Charles did not attempt to mislead the Court. St. Charles attached the charge that it filed with the NLRB to its TRO Motion, which included DWT's reference to Section 10(j). St. Charles repeatedly acknowledged the NLRB's authority and sought only to "ensure that the proper authority, the NLRB, is able to consider the rule on this issue before actual harm is caused by the threatened strike." TRO Motion at 10. While DWT should have addressed Section 10(j) explicitly in its motion, there is no evidence it acted in bad faith, or that the argument was so reckless and frivolous as to merit sanctions. *Primus*, 115 F.3d at 649; *Keegan*, 78 F.3d at 436. Accordingly, for these reasons, the motion should also be denied.

## CONCLUSION

For the foregoing reasons, St. Charles respectfully requests that the Court deny the Motion for Sanctions against St. Charles – there is no evidence (nor any proffered by the OFNHP) that could plausibly suggest that St. Charles acted in bad faith or purposely misled the Court.

Dated: May 19, 2021

/s/ Paul Werner
Paul Werner, admitted *pro hac vice*
Hannah Wigger, admitted *pro hac vice*
Allison Martin Rhodes, OSB No. 000817

**CERTIFICATE OF SERVICE**

      On May 19, 2021, I electronically filed the foregoing document through the CM/ECF system, which will send a notice of electronic filing to the attorneys of record.

      /s/ Paul Werner
      Paul Werner