**Catherine A. Highet** (OSB No. 071306)
HIGHET LAW LLC
1022 SW Salmon Street, Suite 430
Portland, OR 97205
Tel: (503) 228-1889 / Fax: (503) 223-4518
cathy@highetlaw.com

*Attorney for Defendant*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
### EUGENE DIVISION

| | |
|---|---|
| ST. CHARLES HEALTH SYSTEM, INC., an Oregon nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>OREGON FEDERATION OF NURSES AND HEALTH PROFESSIONALS, LOCAL 5017, AFT, AFL-CIO,<br><br>Defendant. | Case No.  6:21-cv-00304-MC<br>**DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SANCTIONS AND COURT'S ORDER TO SHOW CAUSE**<br><br>(Deschutes County Circuit Court, Case No. 21CV07024)<br><br>**Oral Argument by Videoconference Requested**[1] |

---

[1] OFNHP previously requested oral argument for its Motion but did not anticipate the possibility that in-person oral argument might be possible.  OFNHP asks the Court to consider oral argument by videoconference in light of the fact that the parties to this case are located in Bend, and counsel in Portland and other cities.

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 2

    A. **St. Charles knew its TRO was frivolous.** ............................................................... 2

        1. St. Charles is bound by the acts of its attorneys. ........................................ 2

        2. No witness denies St. Charles knew its TRO was frivolous. ...................... 4

        3. St. Charles received multiple written warnings. ......................................... 5

    B. **Section 1927 applies and supports full fees.** ........................................................ 8

        1. Hutcheson multiplied proceedings. ............................................................. 8

        2. Section 1927 requires recklessness plus an additional factor. ................. 10

        3. Section 1927 permits full fees. .................................................................. 10

    C. **St. Charles's arguments remain frivolous.** ......................................................... 12

        1. Hutcheson and St. Charles ignore binding precedent. .............................. 12

        2. *Tidewater* is not good law. ....................................................................... 13

        3. St. Charles's reading of Section 10(j) is unsupported. ............................. 15

        4. COVID does not create jurisdiction. ......................................................... 16

III. CONCLUSION ................................................................................................................ 17

## I. INTRODUCTION

What is most striking about St. Charles's and Hutcheson's opposition filings is what they do not do. Neither Hutcheson nor St. Charles breathes a word about the controlling authority they failed to cite during the TRO proceedings in this case. Section II(C)(1), *infra*. Nor does any witness deny St. Charles knew its TRO application was frivolous. Section I(B)(2), *infra*.

Hutcheson and St. Charles ask that only Hutcheson, if anyone, be sanctioned for St. Charles's actions in seeking to enjoin OFNHP's strike. Section II(A), *infra*. In the Ninth Circuit, clients are bound by the acts of their counsel. Section II(A)(1), *infra*. St. Charles also knew its TRO was frivolous – OFNHP warned it repeatedly, in writing, and St. Charles's Human Resources officers had ample experience to know the warnings were valid. Section II(A)(3), *infra*. Neither St. Charles nor Hutcheson provides any evidence of St. Charles's claimed innocence. Section II(A)(2), *infra*. Their arguments on this point lack factual citations, and their witnesses do not deny St. Charles knew its TRO was frivolous. *Id.* That silence speaks volumes.

Section 1927 sanctions are appropriate in this case because Hutcheson "multiplied" proceedings. Section II(B)(1), *infra*. St. Charles filed an Unfair Labor Practice ("ULP") at the Board, a court Complaint, a TRO application, and other filings, and it increased the risk of an illegal injunction by seeking expedited consideration. *Id.* Section 1927 authorizes an award of full fees, including those for work on the instant Motion and Order to Show Cause. Section II(B)(3), *infra*.

Once again, St. Charles and Hutcheson fail to acknowledge controlling authority when arguing their TRO had merit. Section II(C)(1), *infra*. OFNHP cited six binding Supreme Court and Ninth Circuit cases in its TRO Opposition and Motion for Sanctions. St. Charles and Hutcheson still have not said a word about any of them. They still do not acknowledge that their

arguments, even those in their most recent briefs, contradict Supreme Court holdings. Sections II(C)(2), (3), *infra.*

Finally, the COVID pandemic does nothing to change the frivolous nature of St. Charles's TRO application. Section II(C)(4), *infra.* Rather than seek illegal court intervention, St. Charles should have bargained in good faith with the employees who have given so much on the front lines of the COVID fight. Once St. Charles agreed to bargain, its employees called off their strike. *Id.*

## II.     ARGUMENT

### A.     St. Charles knew its TRO was frivolous.

#### 1.     St. Charles is bound by the acts of its attorneys.

Both St. Charles and Hutcheson argue St. Charles should be spared any sanctions in this case because only Hutcheson is to blame. St. Charles Brief, p. 7-8; Hutcheson Brief, p. 13-14. The argument fails both legally and factually.

In the Ninth Circuit, a party is bound by the acts of its attorney, including for the purpose of sanctions. *Haeger v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233, 1246 (9th Cir. 2016), *vacated on other grounds*, *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017); *Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381, 1387 (9th Cir. 1988).

In *Goodyear*, the District Court awarded sanctions against both counsel and client using its inherent powers. 813 F.3d at 1237. The Ninth Circuit held, "Any attempt by Goodyear to argue that the district court abused its discretion in preventing Goodyear from passing the blame on to its attorneys is unavailing. Goodyear is deemed bound by the acts of its lawyers." 813 F.3d at 1237 (internal quotations omitted) *citing Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962) *and Lockary v. Kayfetz*, 974 F.2d 1166, 1169-70 (9th Cir. 1992). The Supreme Court in *Goodyear*

subsequently held the Ninth Circuit erred as to the amount of the sanctions, but it did not address the fact that they were levied against both party and attorney.  137 S. Ct. at 1184.

Another example in the Ninth Circuit is *Toth*.  In that case, the District Court held the parties and attorneys jointly liable for attorney fees due to disobedience of a court order, as well as dismissing the parties' case entirely.  *Toth*, 862 F.2d at 1383.

> With respect to appellants' claim that sanctions should have been imposed solely on counsel rather than the client, this argument would require us to ignore established law. In [*Link*] the Supreme Court expressly stated:
>
>> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client.  Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequence of the acts or omissions of this freely selected agent.

*Toth*, 862 F.2d at 1383 *quoting Link,* 370 U.S. at 633-34.

Neither St. Charles nor Hutcheson addresses this line of cases.  St. Charles Brief, p. 7-8; Hutcheson Brief, p. 13.  The only Ninth Circuit case either brief cites about who should bear responsibility for sanctions is *Primus*.  St. Charles Brief, p. 6-7 *citing Primus Automotive Financial Services, Inc. v. Batarse*, 115 F.3d 644, 648-49 (9th Cir. 1997); Hutcheson Brief, p. 13 (only Ninth Circuit case cited concerns definition of "bad faith").  What the Ninth Circuit counseled in *Primus* was that an associate should not be sanctioned for conduct of his supervising attorney or client.[2]  115 F.3d at 649-50.  That is to be expected under the agency principles underlying *Haeger*, *Toth*, and *Link* – neither a supervising attorney nor a client is the agent of an associate attorney.

St. Charles "cannot now avoid the consequence of the acts or omissions of [its] freely selected agent." *Toth*, 862 F.2d at 1383 *quoting Link,* 370 U.S. at 633-34.

---

[2] *Primus's* holding is entirely consistent with *Haeger*, *Toth*, and *Link*

## 2. No witness denies St. Charles knew its TRO was frivolous.

In addition to lacking legal support, St. Charles's claims of innocence lack factual support. OFNHP has written documentation that St. Charles was warned repeatedly its TRO was frivolous, while St. Charles cannot manage even a conclusory witness statement to the contrary.

For example, St. Charles asserts it "relied on the expertise of the experts it hired; St. Charles did not 'knowingly or recklessly raise[] a frivolous argument.' *Keegan*, 78 F.3d at 436." St. Charles Brief, p. 8. St. Charles provides no factual citation to support this assertion, only a legal citation for the quote. *Id.* Nor does St. Charles cite evidence to support this claim elsewhere in its brief. *See, e.g.* St. Charles Brief, p. 2, 4, 6. Neither does Hutcheson. *See, e.g.* Hutcheson Brief, p. 5-7, 18.

On the contrary, all of the declarations submitted by St. Charles and Hutcheson studiously avoid the question of whether St. Charles knew that the TRO lacked merit. For example, although St. Charles's brief twice states or implies that St. Charles relied on advice of counsel, the sworn declaration it submits from Vice President of Human Resources Rebecca Berry makes no such assertion. Berry Decl., Docket No. 36-1. Nor does Berry's declaration state that she thought St. Charles's TRO application had merit or that she was ignorant as to whether it had merit. *Id.*

"I did not think the TRO was frivolous" is a simple statement to make, and Berry did not make it.

Similarly, Davis Wright Tremaine attorney Paula Lehmann's declaration discusses the firm's internal deliberations concerning this TRO and Lehmann's motives in seeking it. Lehmann Decl. ¶¶ 5-6, Docket No. 39. However, Lehmann does not say she told St. Charles the TRO had merit. *Id.* Nor does Hutcheson. Hutcheson Decl. ¶¶ 4-6.

The failure to provide testimony on an important point "is persuasive that the[] testimony, if given, would have been unfavorable." *Interstate Circuit, Inc. v. United States*, 306 US 208, 226 (1939). "The production of weak evidence when strong is available can lead only to the conclusion that the strong would have been adverse. Silence then becomes evidence of the most convincing character." *Id.* (internal citations omitted).

The silence of Berry's declaration on St. Charles's key factual argument is evidence that Berry cannot truthfully say she thought the TRO had merit.

St. Charles does not raise attorney-client privilege as the reason it provides no evidence it thought the TRO had merit; St. Charles simply fails to cite any evidence. St. Charles Brief, p. 2, 4, 6, 8; *see also* Hutcheson Brief, p. 5-7, 18. With that said, the Ninth Circuit has made clear that a party must choose between making an argument based on the advice of counsel or asserting privilege as to that advice. *Columbia Pictures Industries, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2000); *Chevron Corp. v. Penzoil Co.*, 974 F.2d 1156, 1162-63 (9th Cir. 1992). "The privilege which protects attorney-client communications may not be used both as a sword and a shield." 974 F.2d at 1162.

Therefore, it is entirely fair to infer from St. Charles's failure to provide factual support for its claims of ignorance that no such evidence exists.

### 3.    St. Charles received multiple written warnings.

St. Charles cannot claim ignorance because OFNHP provided multiple written warnings to St. Charles that the TRO application was frivolous.

For example, immediately after St. Charles filed this case, OFNHP caused written notice to be served directly on St. Charles's Director of Human Resources that the TRO application was frivolous. Lieberman Decl. ¶¶ 4-5; Lieberman Ex. 1.

On February 26, the day after this case was filed, OFNHP filed a ULP alleging St. Charles's case was "a baseless lawsuit in state court that is preempted by the NLRA" and was "attempting to divest the NLRB of its lawful jurisdiction over a labor dispute, thereby interfering with the ability of the Board to exercise its statutory mandate pursuant to the Act." Lieberman Decl. ¶ 4; Lieberman Ex. 1.

OFNHP named St. Charles's Director of Human Resources, not its attorney, as the contact for the ULP. Lieberman Decl. ¶ 5; Lieberman Ex. 1. According to the NLRB's operating procedures, it would have delivered a copy of the ULP to St. Charles directly, not just to counsel. *Id.*

As another example, also on February 26, OFNHP sent St. Charles's attorney, Paula Lehman, a detailed explanation of why the TRO application was frivolous. Lieberman Decl. ¶¶ 6-7; Lieberman Ex. 2. OFNHP explicitly warned that it would seek legal fees from St. Charles in court should St. Charles persist with the case. *Id.*

Lehmann had an ethical duty to inform St. Charles that OFNHP was seeking fees against St. Charles and to advise St. Charles of the risks of pursuing the TRO. *Id.*; Oregon Rule of Professional Conduct 1.4. Neither Lehmann nor Berry claims Lehmann violated this duty. Lieberman Decl. ¶ 7; Section II(A)(2), *supra.* Thus, it is very reasonable to infer that Lehmann shared OFNHP's letter and intent to seek fees with St. Charles.

OFNHP also disseminated the fact that St. Charles's efforts were baseless throughout the hospital. When OFNHP notified St. Charles of its intent to strike, St. Charles began telling and implying to employees that the strike could be illegal. Stylianou Decl. ¶ 2. Therefore, on February 23, 24 and 26, OFNHP emailed the entire bargaining unit responses to St. Charles's legal actions against OFNHP. Stylianou Decl. ¶¶ 3-11; Stylianou Ex. 1-3.

Among the statements in OFNHP's responses were:

- The lawsuit was "frivolous" and "baseless," Stylianou Ex. 3, p. 1,

- That despite the filing of a ULP, "They don't have the power to delay our strike," Stylianou Ex. 1, p. 2.

- "With every day that passes without an injunction to stop the strike it will become clearer to everyone that St. Charles' lawyer is wrong," Stylianou Ex. 2, p. 1.

- "How much are they [St. Charles] willing to risk on the word of an out-of-state attorney with no skin in the game?" Stylianou Ex. 2, p. 1,

OFNHP's practice was not only to email such statements to all bargaining unit members, but to distribute them on paper throughout the hospital. Stylianou Decl. ¶ 7. Employers monitor union communications during the lead-up to a strike, and St. Charles was particularly aggressive in doing so. *Id.* at ¶ 6. Thus, the Court can be confident St. Charles received these warnings as well. *Id.*

Finally, St. Charles's Human Resources department had the experience to know that OFNHP's warnings were valid and to know without warning that the TRO was frivolous. Lieberman Decl. ¶¶ 8-9. St. Charles's nurses are unionized, and the Service Employees International Union represented other employees until a 2012 decertification vote. *Id.* at ¶ 9. St. Charles has been party to at least 35 Board cases. Lieberman Decl. ¶ 9; Lieberman Ex. 3.

The exclusivity of the NLRB's jurisdiction is an elementary principle of private sector labor relations. Lieberman Decl. ¶ 8. For example, in Lieberman's 16 years of labor law experience, he never once prior to this case saw either an employer or a union attempt to bypass the NLRB and pursue a ULP in court. *Id.* "Any professional with experience in private sector labor relations is aware that it is the National Labor Relations Board, not the courts, that implements the National Labor Relations Act." Lieberman ¶ 8.

St. Charles knew from the outset it could not seek to enjoin a ULP in court. OFNHP reminded St. Charles of this basic principle by causing a ULP to be served on St. Charles, by spelling out OFNHP's intent to seek fees in court, and by disseminating warnings that that this lawsuit was baseless throughout the hospital. St. Charles cannot now claim ignorance.

### B. Section 1927 applies and supports full fees.

#### 1. Hutcheson multiplied proceedings.

Hutcheson argues that he is beyond the reach of Section 1927 because he did not "multiply" proceedings as required by that statute. Hutcheson Brief, p. 21-22 FN 12 *citing Braunstein v. Ariz. Dep't of Transp.*, 683 F.3d 1177, 1189 (9th Cir. 2012) *and Schmitzer v. County of Riverside*, 26 Fed. Appx. 701, 703 (9th Cir. 2002)(unpublished).[3] Hutcheson multiplied proceedings because he added both an initial pleading and TRO proceedings to an NLRB Unfair Labor Practice case.

OFNHP agrees that an "initial pleading," without more, is subject to Rule 11 sanctions but not Section 1927. *Braunstein*, 683 F.3d at 1189. However, those courts that have examined the precise scope of Section 1927 have interpreted "initial pleading" narrowly. *R. Prasad Industries v. Douglas*, 673 Fed. Appx. 676, 677 (9th Cir. 2016) (unpublished); *Mirch v. Frank*, 266 Fed. Appx. 586, 588 (9th Cir. 2008) (unpublished).[4] For example, in *Mirch*, the Ninth Circuit held third-party complaints are subject to Section 1927: "a third-party complaint is not an

---

[3] *Schmitzer* is an unpublished case from before 2007 and therefore should not be cited under Ninth Circuit Rule 36-3(c). OFNHP discusses *Schmitzer* solely for the purpose of responding to Hutcheson's discussion of that case.

[4] OFNHP cites these unpublished opinions from after 2007 pursuant to Ninth Cir. Rule 36-3(b). OFNHP is unaware of any published decisions concerning the scope of the "initial pleading" limitation on Section 1927.

initial pleading because it cannot arise absent an underlying case." 266 Fed. Appx. at 588. Similarly, in *R. Prasad Industries*, the court held an amended complaint "did not initiate this litigation" and was therefore subject to Section 1927. 673 F.3d. Appx. at 677.

The cases cited by Hutcheson turn on the effect of the sanctionable claims rather than the scope of the "initial pleading" limitation. In *Braunstein*, the plaintiff pled both frivolous and non-frivolous claims; the non-frivolous claims required significant litigation, while the frivolous ones were easily disposed of. 683 F.3d at 1183, 1189. *Schmitzer* held, not that the need for a motion for summary judgment can never support Section 1927 sanctions, but that the plaintiff's claims in the case before it were not "so meritless that the summary judgment process alone constituted an unnecessary multiplication of the proceedings." 26 Fed. Appx. at 703.

In the case at hand, OFNHP understands the Court's Order to Show Cause to be directed not merely at the filing of a Complaint but primarily at the Application for Temporary Restraining Order, subsequent filings, and request for same-day consideration. Order to Show Cause, p. 1, 4. These are not "initial pleadings" because a TRO "cannot arise absent an underlying case." *Mirch*, 266 Fed. Appx. at 588.

That fact is no mere formalism. A frivolous complaint, standing alone, can be dealt with simply, for example by threatening Rule 11 sanctions and (hopefully) obtaining a voluntary dismissal. FRCP 11(c)(2). However, because of the TRO application, OFNHP had to brief the merits of this case in full and prepare for an evidentiary hearing. St. Charles's request for a TRO and expedited consideration not only created unnecessary work and legal costs; they also greatly increased the risk employees' rights be violated. "Had the defense not cobbled together a quick brief, the court was prepared to issue a completely illegal order based on the law as presented by

the hospital; law the court later learned to be a fiction." Order to Show Cause, p. 4.  "[B]ut for the fact that I was on vacation… I would have granted injunctive relief."  Tr. 4.

Finally, OFNHP notes that the TRO proceedings also multiplied the NLRB proceedings St. Charles purported to support.  Hutcheson Brief, p. 10, 15-16.  Again, this is no mere formalism; for the reasons set out in OFNHP's prior briefing, Congress intentionally limited ULP proceedings to the NLRB.  Opposition to TRO, p. 4-8; *see* Section II(C)(2), *infra.*

### 2. Section 1927 requires recklessness plus an additional factor.

Hutcheson's brief implies that a "bad faith" finding is necessary to support Section 1927 sanctions.  Hutcheson Brief, p. 21 *citing Malhiot v. S. California Retail Clerks Union*, 735 F.2d 1133, 1138 (9th Cir. 1984).  In fact, the Ninth Circuit has clarified that while bad faith is necessary for sanctions under the Court's inherent power, Section 1927 permits sanctions for "recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose."  *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001); *see also B.K.B. v. Maui Police Department*, 276 F.3d 1091, 1108 (9th Cir. 2002) *cited by* Order to Show Cause, p. 5.  Although this Court should use the correct standard, Hutcheson's conduct satisfies either. Section II(C), *infra.*; Motion for Sanctions, p. 9-16.

### 3. Section 1927 permits full fees.

Unlike the "inherent power" sanctions requested in OFNHP's Motion, Section 1927 permits the court to award not only the fees OFNHP incurred opposing the TRO but also the cost of seeking reimbursement of those fees.  *Blixseth v. Yellowstone Mt. Club, LLC*, 854 F.3d 626, 631-32 (9th Cir. 2017).

On April 14, 2021, shortly after this Court's Order to Show Cause, OFNHP notified Hutcheson and St. Charles that it intended to seek such expanded fees against Hutcheson only. Highet Supp. Decl. ¶ 2; Highet Supp. Ex. 1.  No party objected or briefed the question of whether Section 1927 permits full fees.  Highet Suppl. Decl. ¶ 3; *see e.g.* Hutcheson Brief, p. 21-22.  Nonetheless, OFNHP will discuss briefly the reasons for this doctrine, as they demonstrate why an award of full fees is just and necessary in this case.

The Ninth Circuit explained in *Blixseth* that awarding full fees comports with the plain language of Section 1927 and is necessary to make the harmed party whole.

> *Norelus* emphasized that the plain language of § 1927 permits recovery of fees "incurred because of [the sanctionable] conduct," and that were there no sanctionable conduct, there would have been no proceeding to impose sanctions, and no fees incurred in that proceeding. *Id.* at 1298.  So the fees expended to obtain the sanctions award are, in the statute's terms, "incurred because of [the sanctionable] conduct." *Id.*  The *Norelus* court further noted that excluding the costs of obtaining the sanctions award would not fully compensate the harmed party for the wrongful conduct it had suffered. *Id.*; *see also Haynes v. City & Cnty. of San Francisco*, 688 F.3d 984, 987-88 (9th Cir. 2012) (the purpose of § 1927 is to compensate victims of attorneys malfeasance)…

*Blixseth*, 854 F.3d at 631 (brackets in original) *citing Norelus v. Denny's Inc.*, 628 F.3d 1270, 1293 (11th Cir. 2010).

*Norelus* provides additional insight, namely that full fees are necessary to provide a meaningful opportunity to recover any fees:

> If an aggrieved party knows beforehand that it has no hope of recovering the costs necessary to have the other party sanctioned, it will be less likely to pursue sanctions.  In the present case, for example, the costs arising from the sanctions proceedings may have equaled or surpassed the harm inflicted on the defendants during the period from the submission of the errata sheet until the dismissal of Norelus' claims.  An economically rational party would not relish the prospects of an award that is smaller than the costs of obtaining it.

628 F.3d at 1299 (internal citations omitted).

Hutcheson's misconduct cost OFNHP significant fees, in addition to threatening employees' right to strike. OFNHP cannot recover its initial fees without incurring still more. *Norelus*, 628 F.3d at 1299. Therefore, OFNHP respectfully requests that the Court award not only the fees incurred in opposing the TRO but also those incurred in the instant motion. The additional fees to date total $ 23,673.94, and are documented in Exhibits 2 to 4 of the Supplemental Highet Declaration.

### C. St. Charles's arguments remain frivolous.

#### 1. Hutcheson and St. Charles ignore binding precedent.

In their most recent briefs, Hutcheson and St. Charles persist in the behavior that gave rise to the instant motion – ignoring binding Supreme Court and Ninth Circuit precedent.

In its Opposition to St. Charles's TRO and in its Motion for Sanctions, OFNHP cited six Supreme Court or Ninth Circuit cases that preclude the remedy St. Charles sought. Opposition to TRO, p. 4-8 *and* Motion for Sanctions, p. 9-11 *citing Burlington Northern Railway Co. v. Brotherhood of Maintenance of Way Employees*, 481 U.S. 429, 448 (1987)("*Burlington Northern*"); *Wisconsin Department of Industrial, Labor & Human Relations v. Gould, Inc.*, 475 US 282, 286 (1986); *Garner v Teamsters Union*, 346 U.S. 485, 489-91 (1953); *Amalgamated Utility Workers v. Consolidated Edison Co.*, 309 U.S. 261, 261-62, 264-68 (1940); *Burlington Northern & Santa Fe Railway v. International Brotherhood of Teamsters Local 174*, 203 F.3d 703, 708-09 (9th Cir. 2000) ("*BNSF*"); *San Antonio Community Hospital v. Southern California District Council of Carpenters*, 125 F.3d 1230, 1235 (9th Cir. 1997).

Neither Hutcheson nor St. Charles so much as mentions any of these cases. *See, e.g.* Hutcheson Brief, p. 14-19; St. Charles Brief, p. 8-10. Not a single word.

Hutcheson claims there is no "all-fours" authority in this case. Hutcheson Brief, p. 16-17. Hutcheson makes no attempt to explain why any of the six cases above were not on "all-fours" with this case or why they are not binding adverse authority St. Charles had a duty to disclose to this Court. Hutcheson Brief, p. 16-17; *see also id.* at p. 18 ("Again, we are aware of no Supreme Court case… that speaks directly to this issue); *see generally* p. 14-19; St. Charles Brief, p. 8-10.

Neither Hutcheson nor St. Charles has even attempted to rebut the core reason why their TRO application was sanctionable.

### 2.     *Tidewater* is not good law.

Hutcheson and St. Charles rely on *Tidewater* for the proposition that a state court can enjoin an Unfair Labor Practice so long as the NLRB has not yet acted on it. Hutcheson Brief, p. 17-18; St. Charles Brief, p. 10 *citing State ex rel. Tidewater Shaver Barge Lines v. Dobson*, 195 Or. 533 (1952). They fail to acknowledge *Tidewater* is no longer good law. *Id.*

At the risk of stating the obvious, Hutcheson's and St. Charles's argument is a question of federal law – the exclusivity and preemptive effect of the NLRA.[5] They cite a 1952 state court decision in support of their position. Hutcheson Brief, p. 17-18; St. Charles Brief, p. 10 *citing Tidewater, surpa*, 195 Or. 533 (1952). However, the year after *Tidewater*, in 1953, the United States Supreme Court reached precisely the opposite conclusion. *Garner*, 346 U.S. at 486, 490-91, 499-500.

---

[5] In the TRO proceedings, St. Charles also cited *Tidewater* for a separate, state-law proposition, namely that the state's Little Norris-LaGuardia Act does not apply to picketing for an unlawful purpose. Hutcheson Brief, p. 21, FN 11 *citing* St. Charles's Reply in Support of TRO, p. 14 FN 9.

In *Garner*, the Supreme Court considered question of whether state courts could offer supplemental remedies, such as injunctive relief, for unfair labor practices. 346 U.S. at 489. It held they could not. 346 U.S. at 490-91, 499-500.

> Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies. . .
>
> The same reasoning which prohibits federal courts from intervening in such cases, *except by way of review or on application of the federal Board*, precludes state courts from doing so.

346 U.S. at 490-91 (emphasis added, citations omitted).

The Supreme Court explicitly rejected the idea that states could step in to address what Hutcheson and St. Charles call "a wrong without a remedy." *Compare* Hutcheson Brief, p. 17 *with* 346 U.S. at 486, 499-500. Even the gaps in the NLRA's procedures are intentional. 346 U.S. at 499-500.

> The detailed prescription of a procedure for restraint of specified types of picketing would seem to imply that other picketing is to be *free of other methods and sources of restraint*. For the policy of the national Labor Management Relations Act is not to condemn all picketing but only that ascertained *by its prescribed processes* to fall within its prohibitions. Otherwise, it is implicit in the Act that the public interest is served by freedom of labor to use the weapon of picketing. *For a state to impinge on the area of labor combat designed to be free is quite as much an obstruction of federal policy as if the state were to declare picketing free for purposes or by methods which the federal Act prohibits.*

346 U.S. at 499-500(emphasis added); *see also* 346 U.S. at 486 (noting but ultimately rejecting argument that "slow administrative processes" rendered Board-driven remedies "inadequate").

As previously discussed, subsequent Supreme Court and Ninth Circuit cases reinforce this holding. Opposition to TRO, p. 4-8; Motion for Sanctions, p. 9-11. OFNHP will not belabor the point here.

### 3. St. Charles's reading of Section 10(j) is unsupported.

Hutcheson's and St. Charles's creative parsing of Section 10(j) fails for the same reason. *See* Hutcheson Brief, p. 15 *and* St. Charles Brief, p. 9-10. If Section 10(j)'s requirement that the Board issue a Complaint before seeking a TRO is actually a meaningful gap in the NLRA's procedures, the Supreme Court has expressly rejected the idea that states may fill that gap. *Garner*, 346 U.S. at 486, 499-500; *see also* Opposition to TRO, p. 4-8; Motion for Sanctions, p. 9-11.

Regardless of whether St. Charles's *post hoc* statutory reading would be a good faith basis to overturn controlling precedent, it does not excuse St. Charles's failure to cite controlling precedent. *See* Motion for Sanctions, p. 11-12.

St. Charles also claims its ULP was meritorious and implies the only reason the Board did not seek injunctive relief was an inability to act quickly. St. Charles Brief, p. 2-3; *see also* Hutcheson Brief, p. 15. Both have so far proven false – the Regional Director has dismissed St. Charles's charge, finding St. Charles's interpretation of the 30-day notice requirement failed for reasons similar to those in the Court's decision on the TRO.[6] Lieberman Decl. ¶ 11; Lieberman Ex. 4; Transcript, p. 13-15.

---

[6] St. Charles can appeal the dismissal, but successful appeals are extremely rare. *Id.*

### 4. COVID does not create jurisdiction.

Both Hutcheson and St. Charles devote significant attention to the COVID crisis in their briefs. Hutcheson Brief, p. 2-5, 8, 11, 16; St. Charles Brief, p. 3-5, 9-10. The issue on which St. Charles misled this Court was not the balance of harms element for injunctive relief, but whether this court has the authority to enjoin a strike at the request of an employer. Order to Show Cause, p. 1-2, 4-5; *see also* Transcript, p. 4, 7-8, 12-13. The COVID pandemic simply has no bearing on that question.

St. Charles argues it had "no other recourse" than to seek injunctive relief. St. Charles Brief, p. 10. But all St. Charles had to do to avert a strike was bargain with its employees – to "meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment," as it is required to do under the NLRA. 29 U.S.C. § 158(d). This St. Charles steadfastly refused to do. Transcript, p. 14-15; Opposition to TRO, p. 2-4.

> As this Court found in the TRO hearing:
>
> The parties last met on December 3rd, 2020. . . On February 2nd, plaintiff stated it would only meet with the union through a mediator, … and plaintiffs chose the last offered date of March 10th.
>
> Throughout the rather truncated negotiations, the union has e-mailed plaintiff on numerous occasions asking for more availability, even offering to be available on weekends and evenings…
>
> And I know we're in the face of a pandemic, but to some degree, the emergency that the plaintiff is describing at this point is one of their own making. The pandemic cannot be used as an excuse to ignore the very workers who you want serving on your front lines during this time.

Tr. 14-15.

When St. Charles finally agreed to come to the table, the strike ended. Stylianou Decl. ¶¶ 12-13; Highet First Decl. Ex. 2. St. Charles should have come to the bargaining table rather than to court.

## III. CONCLUSION

For all the foregoing reasons, and for the reasons set out in its Motion, sanctions are appropriate against both Hutcheson and St. Charles. OFNHP respectfully requests that this Court find Hutcheson responsible for all fees in this case, $ 40,625.52 to date, with St. Charles jointly and severally liable for those incurred opposing the TRO itself, $ 16,951.58.

Respectfully submitted,

Dated: July 21, 2021  HIGHET LAW LLC

By:   s/ Catherine A. Highet
Catherine A. Highet (OSB No. 071306)
HIGHET LAW LLC
1022 SW Salmon Street, Suite 430
Portland, OR 97205
Tel: (503) 228-1889 / Fax: (503) 223-4518
cathy@highetlaw.com
*Attorney for Defendant*