IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ST. CHARLES HEALTH SYSTEM, INC.
an Oregon nonprofit corporation,

        Plaintiff,

        v.

OREGON FEDERATION OF NURSES
AND HEALTH PROFESSIONALS,
LOCAL 5017, AFT, AFL-CIO,

        Defendant.

_____

Case No. 6:21-cr-304-MC

ORDER

**MCSHANE, Judge**:

    The parties here are familiar with the facts relevant to the pending motion for fees and the Court's *sua sponte* order that attorney Mark Hutcheson show cause demonstrating why he should not be sanctioned for violating his ethical duty to alert the Court to directly contrary authority. The Court also ordered Hutcheson to show cause why he should not be sanctioned under 28 U.S.C. § 1927 for filing the action in bad faith. Although the Court will not rehash the background here, the gist of Defendant's motion for fees and the show cause order relates to what the Court viewed, and expressly finds here, as an attempt to deceive the Court via a material omission (of directly contrary authority) into issuing an injunction on short notice to provide the Plaintiff Hospital with a useful bargaining chip during ongoing negotiations with the Defendant Union. Again, the facts regarding this finding are outlined in the Court's April 7, 2021 Opinion. ECF No. 24.

1 – OPINION AND ORDER

In responding to the show cause order, Hutchenson (and his law firm Davis Wright Tremaine) essentially argue that although in hindsight they could have done more to alert the Court of binding, contrary precedent, their actions are not sanctionable because they were merely arguing for an "extension" of existing caselaw and were unable to identify any case "on all fours" with the underlying facts here.[1] This explanation is meritless.

As the Court now understands, any attorney with any experience involving labor disputes like the one at issue here would certainly understand that the law did not allow for a district court to issue an injunction under these circumstances. The Court finds that Plaintiff intentionally omitted any mention of that law when arguing they were entitled to emergency injunctive relief. The same day Defendant removed this action, Plaintiff's counsel emailed chambers staff seeking a hearing that afternoon. ECF No. 21-1, 3. At the time of this request, the only briefing the court had on the matter was the hospital's emergency motion for a restraining order. As noted, conspicuously absent from that motion was any mention of the fact that longstanding, settled caselaw clearly established that a district court lacked jurisdiction to enter such an order.

In eight years on the federal bench, this action is this Court's first experience dealing with section 10(j) of the National Labor Relations Act. The reason federal courts rarely see these cases is simple: section 10(j) provides that only the National Labor Relations Board may seek an injunction to prevent an unfair labor practice under the National Labor Relations Act.[2] One fact influencing this Court's determination that Plaintiff here acted in bad faith is the fact that although

---

[1] For the sake of clarity, although the Court places "extension" in quotations, there was no mention, at all, in Plaintiff's memorandum that it in fact sought an "extension" of existing caselaw. The Court uses quotations here merely because Plaintiff's counsel used that language in emails with opposing counsel and in the response to the Court's show cause order.

[2] In some situations not present here (involving preemption issues or motions advanced by a state attorney general), courts may grant injunctive relief even when such relief is not sought by the National Labor Relations Board.

Plaintiff raised Section 10(j) in an earlier motion (at the administrative level) asking the National

Labor Relations Board to enjoin the strike, it omitted any mention of Section 10(j) in its motion

for emergency relief before this Court. In his response, Hutcheson states:

> Under this extreme and once-in-a-century pandemic situation, we believed that even though a court might well decline to grant the relief we were requesting on jurisdictional or other grounds, we were entitled to try to seek such relief on our client's behalf.

Hutcheson Decl. ⁋ 6(d); ECF No. 38.

The problem for Hutcheson is that nowhere in his briefings did he alert the Court to the

fact that existing caselaw—caselaw that any attorney practicing in this area of law would certainly

be well-aware of—presented huge jurisdictional issues that Plaintiff could only clear by first

obtaining an "extension" of existing caselaw. The American Bar Association publishes the Model

Rules of Professional Conduct. "Rule 3.3(a)(3) prohibits an attorney from knowingly failing to

disclose controlling authority directly adverse to the position advocated. The rule is an important

one, especially in the district courts, where its faithful observance by attorneys assures that judges

are not the victims of lawyers hiding the legal ball." *Transamerica Leasing, Inc. v. Compania

Anonima Venezolana de Navegacion*, 93 F.3d 675 (9th Cir. 1996); *see also Southern Pacific

Transp. Co. v. Public Utilities Com'n of State of Cal.*, 716 F.2d 1285, 1291 (9th Cir. 1983) (noting

the apparent "dereliction of duty to the court" when counsel failed to mention adverse, controlling

authority to the court in violation of the Code of Professional Responsibility). The Court finds that

Hutcheson knowingly failed to disclose controlling authority directly adverse to the position

advocated. It is not credible to believe this was merely an inadvertent omission. Additionally,

Hutcheson's post-hoc argument, where he pieces together bits from his earlier memo to argue he

indirectly alerted the Court to the jurisdictional issues, is unconvincing.

Hutcheson writes: "I also accept full responsibility for the fact that we did not initially address the jurisdictional questions that arise under Section 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j) or application of the Norris-LaGuardia Act, 29 U.S.C. § 107. In the very limited period of time in which we had to put our pleadings together, we focused on perceived harm instead of jurisdictional issues." Hutcheson Decl. ⁋ 7. That time was of the essence, however, is the reason that Plaintiff's intentional omission of jurisdictional issues is so concerning. As noted in the show cause order, had the defense not cobbled together a quick brief, the Court was prepared to issue a completely illegal order based on the law as presented by the hospital; law the court later learned to be a fiction.[3]

In addition to being subject to the sanctions under the Court's inherent authority, Hutcheson is liable under 28 U.S.C. § 1927. That statute provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

As noted, the fact that the hospital cited Section 10(j) in its motion asking the National Labor Relations Board to enjoin the strike yet omitted any mention of that section in its motion for emergency injunctive relief, confirms that both the motion and the complaint itself were filed in bad faith. On this record, taking note of the tense negotiations going on behind the scenes, the Court finds that the goal of this action was not to advance a valid legal argument or claim, but

---

[3] At oral argument, the Court clarified that due to the very short deadline between the filing of the motion and the planned strike, it would have granted an injunction based solely on Plaintiff's brief because Plaintiff's argument, aided by intentional, material omissions, "made perfect sense." ECF No. 17, 4. In fact, had the Court not been on vacation, it would have granted a brief injunction on Friday afternoon to maintain the status quo during expedited proceedings on the motion for emergency injunctive relief. *Id.* Only upon being brought up to speed, thanks to Defendant's inclusion of Plaintiff's omissions, did the Court learn Plaintiff failed to establish any likelihood of success on the merits.

rather to gain a valuable negotiating chip (in the form of an injunction prohibiting a rapidly approaching strike) during longstanding discussions with the union. Additionally, the Court expressly finds that this was not an action filed to pursue an "extension" of existing law. After all, Plaintiff never alerted the Court to the fact that it sought such an extension. The Court concludes that Hutcheson made these filings in bad faith for an improper purpose and has earned sanctions. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002).

Hutcheson argues that, considering he merely sought an extension of existing caselaw, his filings were not frivolous. The Court once again disagrees. Had Hutcheson raised the (insurmountable) jurisdictional hurdles imposed by decades of existing precedent, the Court would have denied the emergency motion via a minute order. While perceived harm clearly may, in some circumstances, justify injunctive relief, those harms do not trump the fact that the Court here lacked jurisdiction to remedy such harms. The Court finds that Hutcheson unreasonably multiplied proceedings in this case merely by filing the case in the first place, and then moving for emergency injunctive relief without alerting the Court to the jurisdictional issues. By filing the Complaint, Hutcheson forced the Defendant Union to respond, on extremely short notice, to the request for injunctive relief. This case should have never progressed beyond Plaintiff's administrative filing. The Court finds that under 28 U.S.C. § 1927, Hutcheson and Davis Wright Tremaine are liable for all of Defendant's fees incurred in this federal action. *See Blixseth v. Yellowstone Mt. Club, LLC*, 854 F.3d 626, 631-32 (9th Cir. 2017).

Hutcheson makes no argument objecting to the fees sought (other than to argue that the Court should award no fees). Hutcheson does not challenge the hourly rates of Defendant's attorneys, or the number of hours sought. That said, the Court conducted a *de novo* review of the fees sought.

The Ninth Circuit applies the "lodestar" method for calculating attorney fees. *Fischer v. SJB–P. D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). That calculation multiplies a reasonable hourly rate by the number of hours reasonably expended in the litigation. *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933 (1983). A "strong presumption" exists that the lodestar figure represents a "reasonable fee," and it should therefore only be enhanced or reduced in "rare and exceptional cases." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986). Ordinarily, the court decides whether to enhance or reduce the lodestar figure by evaluating a set of factors. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Prevailing market rates are those that the local legal market would pay for a case of this nature to a lawyer of comparable skill, experience, and reputation to a plaintiff's counsel of record. *Blum v. Stenson,* 465 U.S. 886, 897 (1984). After consulting the Oregon State Bar's Economic Survey, the Court concludes the hourly rate and hours sought on page 18 Defendant's Motion for Sanctions, ECF No. 20, and Exhibits 2-4 of the Supplemental Highet Declaration are reasonable and would not have been incurred but for the bad faith filing of this action. Defendants are entitled to $40,625.52 in fees.[4]

IT IS SO ORDERED.

DATED this 16th day of December, 2021.

/s Michael McShane
Michael J. McShane
United States District Judge

---

[4] Defendant seeks fees incurred responding to the motion for a TRO from the hospital. Because the Court concludes Hutcheson and Davis Wright Tremaine are liable for all of Defendant's fees, the motion for fees against the hospital is DENIED as moot. Additionally, the hospital was entitled to rely on experienced, high-priced counsel for advice. There is nothing on this record that indicates the hospital did anything more than that. That the union opined to the hospital's attorneys that this action was frivolous does not imply otherwise. Attorneys routinely send threatening letters. Nothing on this record indicates that, despite Defendant's emails directly to the hospital, the hospital did anything other than rely on the advice of its attorneys.